UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ANITA GRANDY,

                      Plaintiff,

           -against-

MANHATTAN AND BRONX SURFACE
TRANSIT OPERATING AUTHORITY and
TRANSIT WORKERS UNION LOCAL 100,

                    Defendants.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/26/2018

16-CV-6278 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

        Plaintiff Anita Grandy has sued her employer, Defendant Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA" or "the Authority"), and the labor union of which she is a member, Defendant Transport Workers Union Local 100 ("TWU" or "the Union"), for employment discrimination, hostile work environment, and retaliation, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq. See* Am. Compl., Dkt. 46. Defendants have moved for summary judgment on all claims. *See* TWU Notice of Mot., Dkt. 82; MaBSTOA Notice of Mot., Dkt. 78. For the following reasons, the motions are GRANTED IN PART AND DENIED IN PART. The parties are ORDERED to appear for a conference on **October 12, 2018 at 10:00 a.m.**, in Courtroom 443 of the Thurgood Marshall U.S. Courthouse, to set a trial schedule. No later than **October 4, 2018**, the parties must submit a joint letter with three mutually convenient trial dates between January 2, 2019 and May 1, 2019.

# BACKGROUND[1]

MaBSTOA operates New York City's public bus service in Manhattan and the Bronx. *See* MaBSTOA Mem. of Law at 1. TWU is a labor organization that represents MaBSTOA employees. *See* Defs.' 56.1 Stmt. ¶ 3; Pl.'s 56.1 Stmt. ¶ 3. Since 2012, Plaintiff has worked in MaBSTOA's Maintenance Division. *See* Defs.' 56.1 Stmt. ¶¶ 4–5; Pl.'s 56.1 Stmt. ¶¶ 4–5; Grandy Decl. ¶ 2; Lane Decl. ¶¶ 5–6. The employees of the Maintenance Division are overwhelmingly male. *See* Grandy Decl. ¶¶ 10, 26; Kateran Dep. at 75–76, 87–91; Candia Dep. at 23–25. Plaintiff works as a Cleaner, an entry-level position responsible for cleaning MaBSTOA's buses and bus depots. *See* Defs.' 56.1 Stmt. ¶¶ 4–5; Pl.'s 56.1 Stmt. ¶¶ 4–5. Each Cleaner is assigned to a specific bus depot, where other MaBSTOA maintenance employees in various positions also work. *See* Defs. 56.1 Stmt. ¶¶ 5–6; Pl.'s 56.1 Stmt. ¶¶ 5–6. Plaintiff has rotated through several bus depots during the course of her employment. *See* Defs.' 56.1 Stmt. ¶¶ 7, 11, 13, 18, 22, 26; Pl.'s 56.1 Stmt. ¶¶ 7, 11, 13, 18, 22, 26.

---

[1] All facts stated herein are undisputed unless otherwise indicated. The Court will refer to the parties' filings as follows: the Declaration of Daniel Chiu in Support of MaBSTOA's Motion, Dkt. 79, as "Chiu Decl."; MaBSTOA's memorandum of law in support of its motion, Dkt. 80, as "MaBSTOA Mem. of Law"; MaBSTOA and TWU's joint Rule 56.1 Statement, Dkt. 81, as "Defs.' 56.1 Stmt."; the Declaration of James Whalen in Support of TWU's Motion, Dkt. 83, as "Whalen Decl."; the Declaration of Laura Barbieri in Support of TWU's Motion, Dkt. 84, as "Barbieri Decl."; TWU's memorandum of law in support of its motion, Dkt. 85, as "TWU Mem. of Law"; the Declaration of Karena Lane in opposition to Defendants' motions, Dkt. 93, as "Lane Decl."; Plaintiff's amended memorandum of law in opposition to MaBSTOA's motion, Dkt. 105, as "Pl.'s Mem. of Law in Resp. to MaBSTOA"; Plaintiff's amended memorandum of law in opposition to TWU's motion, Dkt. 106, as "Pl.'s Mem. of Law in Resp. to TWU"; the Declaration of Anita Grandy in opposition to Defendants' motions, Dkt. 107, as "Grandy Decl."; Plaintiff's Rule 56.1 Counterstatement, Dkt. 108, as "Pl.'s 56.1 Stmt."; the Declaration of Andrea Paparella in opposition to Defendants' motions, Dkt. 109, as "Paparella Decl."; the Reply Declaration of Daniel Chiu in further support of MaBSTOA's motion, Dkt. 110, as "Chiu Reply Decl."; the Reply Declaration of Antonio Seda in further support of MaBSTOA's motion, Dkt. 111, as "Seda Reply Decl."; the Reply Declaration of Nick Kapovic in further support of MaBSTOA's motion, Dkt. 112, as "Kapovic Decl."; MaBSTOA's reply memorandum of law in further support of its motion, Dkt. 113, as "MaBSTOA Reply Mem. of Law"; TWU's reply memorandum of law in further support of its motion, Dkt. 114, as "TWU Reply Mem. of Law"; the Declaration of Laura Barbieri in further support of TWU's motion, Dkt. 115, as "Barbieri Reply Decl."; and the Declaration of Michael Rehn in further support of TWU's motion, Dkt. 116, as "Rehn Reply Decl." All deposition transcripts are docketed as exhibits to the Paparella Declaration, Dkt. 109. The deposition transcripts of those witnesses who sat for multiple depositions are referred to herein as "Dep. (Part I)," "Dep. (Part II)," and so forth.

During her time as a Cleaner, Plaintiff was considered several times for promotion to "Helper," a more senior and higher-paying position. *See* Defs.' 56.1 Stmt. ¶¶ 36–40; Pl.'s 56.1 Stmt. ¶¶ 36–40. MaBSTOA failed to promote her each time. *See* Defs.' 56.1 Stmt. ¶¶ 31, 36–40; Pl.'s 56.1 Stmt. ¶¶ 31, 36–40. At times, Plaintiff also sought to work overtime, which is allocated by TWU to Union members. She was, on occasion, not chosen by TWU for overtime. *See* Defs.' 56.1 Stmt. ¶¶ 41, 44; Pl.'s 56.1 Stmt. ¶¶ 41, 44.

Plaintiff has filed many discrimination complaints against her co-workers and Union representatives during the course of her employment. *See* Defs.' 56.1 Stmt. ¶¶ 11, 14–16, 97–112; Pl.'s 56.1 Stmt. ¶¶ 11, 14–16, 97–112. Among other complaints, Plaintiff has previously alleged that MaBSTOA's failure to promote her and TWU's failure to provide her overtime constituted gender discrimination. *See* Defs.' 56.1 Stmt. ¶¶ 11, 14–16, 97–112; Pl.'s 56.1 Stmt. ¶¶ 11, 14–16, 97–112. Plaintiff has also complained of a hostile work environment, alleging that male MaBSTOA employees frequently used the word "bitch" to refer to female co-workers, that sexualized images of women were posted throughout MaBSTOA bus depots, and that other incidents of verbal abuse and sexual harassment have occurred. *See* Defs.' 56.1 Stmt. ¶¶ 60, 69–71; Pl.'s 56.1 Stmt. ¶¶ 60, 69–71; Barbieri Decl. Ex. A. Plaintiff has submitted these complaints to her MaBSTOA supervisors, her TWU representatives, TWU's Executive Board, the New York State Public Employment Relations Board ("PERB"), and, ultimately, the United States Equal Employment Opportunity Commission ("EEOC"). *See* Defs.' 56.1 Stmt. ¶¶ 11, 14–16, 97–112; Pl.'s 56.1 Stmt. ¶¶ 11, 14–16, 97–112.

In this case, Plaintiff alleges gender discrimination, retaliation, and hostile work environment pursuant to Title VII, the NYSHRL, and the NYCHRL. *See* Am. Compl. She also

sues for interference with protected rights and for aiding and abetting, pursuant to the NYCHRL.

*See id.* ¶¶ 206–207.[2]

## DISCUSSION

### I.     Standard of Review

#### A.     Legal Standard for Motions for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "Where the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

genuine issue for trial." *Scott v. Harris,* 550 U.S. 372, 380 (2007) (internal quotation marks

omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87

(1986)). To defeat summary judgment, the nonmoving party must come forward with "specific

facts showing that there is a genuine issue for trial." *Sista v. CDC IXIS N. Am., Inc.*, 445 F.3d

161, 169 (2d Cir. 2006). Courts "construe the facts in the light most favorable to the nonmoving

party and resolve all ambiguities and draw all reasonable inferences against the movant."

*Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam).

---

[2]     Plaintiff also purports to bring a claim for vicarious liability under the NYCHRL. *See* Am. Compl. ¶¶ 210–12. This doctrine is a theory of liability, to be used in connection with other claims, not a freestanding cause of action. Accordingly, the Court will discuss this doctrine in connection with Plaintiff's other claims.

      Additionally, the Court notes that Plaintiff's Amended Complaint asserts a hostile work environment claim only pursuant to Title VII, not pursuant to NYSHRL or NYCHRL. *See* Am. Compl. ¶¶ 176–212. Nevertheless, Defendants' motion papers address their liability for hostile work environment under all three statutes. Because Defendants appeared to have had fair notice that Plaintiff would bring this claim under all three statutes, and because Plaintiff's failure to bring this claim under the NYSHRL and NYCHRL appears to have been an oversight, the Court will construe the Amended Complaint as raising all three claims. Plaintiff's counsel is warned, however, that such sloppiness will not be excused in the future.

### B.      Other Considerations

Both Defendants' motions and Plaintiff's response have been seriously compromised by their disorganized and unprofessional motion papers. The parties' memoranda of law are, in large part, bare-bones, conclusory arguments with limited citations to the record. The Court is "under no obligation to engage in an exhaustive search of the record" when resolving a motion for summary judgment. *Jones v. Goord*, 435 F. Supp. 2d 221, 259 (S.D.N.Y. 2006) (citing *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470–71 (2d Cir. 2002)); *see also* Fed. R. Civ. P. 56(c)(3); *Lee v. Alfonso*, 112 F. App'x 106, 107 (2d Cir. 2004). Thus, to the extent that the parties' briefs failed to include citations to the record, the Court has not searched through the record for evidence to support their arguments.

Plaintiff also made a serious strategic error in scattering a laundry list of grievances throughout her submissions, without focusing on the evidence that supports her core claims. Plaintiff's disorganized "throw-it-all-up-and-see-what-sticks" approach ultimately did her a disservice, as she failed to pursue numerous theories of liability alleged in her Amended Complaint. If a party moves for summary judgment on particular claims, and the non-moving party fails to address those claims in her response papers, a court may deem those claims abandoned. *See Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016); *Jackson v. Federal Express*, 766 F.3d 189, 195 (2d Cir. 2014) (if a non-moving party submits "a partial response arguing that summary judgment should be denied as to some claims while not mentioning others," that response "may be deemed an abandonment of the unmentioned claims"). Specifically, as the non-moving party, Plaintiff had an obligation to defend her claims with legal argument and citations to the record in her memoranda of law, not merely with brief responses in her Rule 56.1 Statement. *See Camarda*, 673 F. App'x at 30 (deeming claims abandoned when the plaintiff's memorandum of law failed to discuss those claims, even though the plaintiff's

response to the defendants' Rule 56.1 statement properly "respond[ed] to each of defendants' proposed undisputed facts"); *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143–44 (2d Cir. 2016) (deeming claims abandoned because the plaintiff's memorandum of law was "bereft of any mention of the . . . claims, let alone argument why these claims should survive summary judgment" (emphasis omitted)); *Jackson*, 766 F.3d at 195 (a district court may draw an inference of abandonment from all of "the papers and circumstances viewed as a whole"). Accordingly, where Defendants moved for summary judgment on particular claims, arguments, or theories of liability, and where Plaintiff failed to address them in her memoranda of law, the Court has deemed those claims, arguments, and theories abandoned.

Additionally, a large portion of Plaintiff's response fails to comply with basic rules of evidence. Plaintiff's response relies heavily on her own declaration, *see* Grandy Decl., Dkt. 107, but she concedes in the declaration that she lacks personal knowledge of numerous facts asserted therein. *See, e.g.*, Grandy Decl. ¶¶ 54–56, 58(c), 62, 67, 86, 118, 160. Where Plaintiff's declaration proffers facts that would not be admissible in evidence, the Court has not considered them. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge [and] set out facts that would be admissible in evidence . . . ."); *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001); *Wahad v. Fed. Bureau of Investigation*, 179 F.R.D. 429, 435 (S.D.N.Y. 1998) ("When an affidavit does not comply with these basic requirements, the offending portions should be disregarded by the court." (citing *United States v. Alessi*, 599 F.2d 513, 514–15 (2d Cir. 1979))).[3]

---

[3] This approach is particularly warranted here, as Plaintiff's response includes volumes of documents, most of which are not cited anywhere in Plaintiff's memoranda of law or her 56.1 statement. Plaintiff acknowledges that "[n]ot all Plaintiff's Exhibits are specifically cited" in her briefs and that she "include[d] such Exhibits so that [she] may refer to them at any oral argument." Paparella Decl. ¶ 17. But "Plaintiff cannot expect the Court to comb the record to find evidence not highlighted in [Plaintiff's] motion papers—summary judgment is not a game of hide and seek." *Kalola v. Int'l Bus. Machines Corp.*, No. 13-CV-7339, 2017 WL 5495410, at *4 (S.D.N.Y. Jan. 9, 2017).

## II. TWU's and MaBSTOA's Motions for Summary Judgment Are Granted as to Plaintiff's Claim for Aiding and Abetting Under the NYCHRL

Plaintiff purports to bring a claim for "aiding and abetting" under the NYCHRL. *See* Am. Compl. ¶¶ 208–209. TWU expressly moved for summary judgment on this claim, *see* TWU Mem. of Law at 19–22, but Plaintiff fails to discuss it anywhere in her memorandum of law, *see* Pl.'s Mem. of Law in Resp. to TWU; accordingly, Plaintiff has abandoned this claim as to TWU. *See Camarda*, 673 F. App'x at 30.[4]

While MaBSTOA did not move specifically for summary judgment on this claim, Plaintiff fails to explain how MaBSTOA could be liable under an aiding and abetting theory; indeed, MaBSTOA's liability as a principal is a predicate for any *other* actor's liability on an aiding-and-abetting theory. *See Ren Yuan Deng v. N.Y. State Office of Mental Health*, No. 13-CV-6801, 2015 WL 221046, at *5 (S.D.N.Y. Jan. 15, 2015) ("[A] predicate for aider and abettor liability under this provision is employer liability."); *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999) ("[L]iability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor."). Plaintiff's memorandum of law in response to MaBSTOA's motion fails entirely to mention the aiding and abetting theory. *See* Pl.'s Mem. of Law in Resp. to MaBSTOA. Accordingly, to the extent that Plaintiff intended to bring a claim against MaBSTOA for aiding and abetting discrimination, the Court grants summary judgment to MaBSTOA on that claim.

---

[4] While Plaintiff asserts that TWU "aided and abetted MaBSTOA in creating a hostile work environment," she does so only in the context of discussing Title VII, not the NYCHRL. Pl.'s Mem. of Law in Resp. to TWU at 18 ("TWU officials . . . aided and abetted MaBSTOA in creating a hostile work environment for [Plaintiff], thus subjecting TWU to liability under Title VII's prohibition against a union's causing or attempting to cause an employer to discriminate."). Indeed, the case that Plaintiff cites for this point, *Agosto v. Corr. Officers Benev. Ass'n*, 107 F. Supp. 2d 294, 306 (S.D.N.Y. 2000), also uses the term "aiding and abetting" in the Title VII context. Accordingly, this part of Plaintiff's response does not change the Court's conclusion that Plaintiff has abandoned her aiding and abetting claim brought pursuant to the NYCHRL.

For all these reasons, the Court grants TWU and MaBSTOA summary judgment on Plaintiff's aiding and abetting claim brought pursuant to the NYCHRL.

## III.    MaBSTOA's Motion for Summary Judgment Is Granted in Part and Denied in Part

### A.    MaBSTOA's Motion is Denied as to Plaintiff's Gender Discrimination Claims

Plaintiff brings gender discrimination claims against MaBSTOA, arguing that the Authority discriminated against her by failing to promote her to Helper.  *See* Pl.'s Mem. of Law in Resp. to MaBSTOA at 12–14.[5]

#### 1.    The Applicable Law

Discrimination claims brought against an employer pursuant to Title VII and the NYSHRL are analyzed using "the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)."  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *see also Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). A plaintiff first must establish a prima facie case by offering evidence:  "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 138

---

[5]    The Amended Complaint also alleges that MaBSTOA discriminated against Plaintiff by denying her overtime pay, by giving her unfavorable assignments, and through a series of other actions.  Plaintiff's response to MaBSTOA's motion, however, relies solely on a failure-to-promote theory for her discrimination claims.  *See* Pl.'s Mem. of Law in Resp. to MaBSTOA at 12–24.  Plaintiff, therefore, has abandoned all bases of gender discrimination against MaBSTOA other than the Authority's failure to promote her to Helper.  *See Camarda*, 673 F. App'x at 30; *Jackson*, 766 F.3d at 195.

Plaintiff's memorandum of law also asserts that MaBSTOA's suspension of Plaintiff in 2013 was the product of discrimination.  *See* Pl.'s Mem. of Law in Resp. to MaBSTOA at 4–6, 21–22.  Because this allegation is not in the Amended Complaint, Plaintiff may not rely on it as a theory of liability.  *See Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99-CV-10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in [a plaintiff's] opposition papers, and hence such new allegations and claims should not be considered in resolving the motion.").  To the extent that MaBSTOA argues that the suspension was a reason for its failure to promote her, however, Plaintiff may argue that this reason is pretextual.

(2d Cir. 2008) (internal quotation marks and citations omitted) (citing *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)). "[I]t is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014); *see also Littlejohn v. City of New York*, 795 F.3d 297, 307–08 (2d Cir. 2015). The NYCHRL imposes even broader liability than these standards. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).

## 2. Plaintiff's Prima Facie Case

MaBSTOA does not dispute that Plaintiff has satisfied the first three elements of this test with respect to her failure-to-promote claim. *See* MaBSTOA Mem. of Law at 7.[6] As for the fourth element, Plaintiff asserts—and MaBSTOA does not dispute—that only 50 out of the 1,100 employees in the Maintenance Division (or 4.5 percent) are women and that very few of them have risen to positions higher than Cleaner. Grandy Decl. ¶¶ 10, 26; *see also* Kateran Dep. at 75–76, 87–91; Candia Dep. at 23–25, 36–37; Lane Decl. ¶¶ 5–6.

Additionally, Plaintiff presents evidence that MaBSTOA departed from procedural regularity in making promotion decisions. Plaintiff offers evidence that Cleaners had to take a promotional exam in order to be promoted to Helper and, indeed, that MaBSTOA supervisors told her several times in 2013 and early 2014 that she would not be considered for promotion until she took the exam. *See* Kateran Dep. at 105; Paparella Decl., Exs. 49, 84. Nevertheless, at around the same time, MaBSTOA promoted Cleaners who had *not* taken the exam (specifically,

---

[6] MaBSTOA spends several pages in its brief arguing that *other* actions of MaBSTOA employees—apart from the Authority's failure to promote Plaintiff—did not rise to the level of adverse employment actions and, thus, cannot satisfy Plaintiff's prima facie case. *See* MaBSTOA Mem. of Law at 7–9. As the Court has discussed, Plaintiff has abandoned her discrimination claims with respect to these actions, *see supra* n.5; accordingly, the Court need not address them.

Laverne Thomas, Clinton Hall, and Edwin Little). *See* Kapovic Decl. ¶¶ 5, 7; Pl.'s 56.1 Stmt.

¶ 114.4. MaBSTOA explains the promotions of Thomas, Hall, and Little by asserting that its

procedures allow for Cleaners to be promoted to Helper without an exam if "no viable candidates

are available from promotional exam sources." Kapovic Decl. ¶¶ 6, 8. MaBSTOA fails to

explain, however, why Plaintiff was repeatedly told that a promotional exam was required if, in

fact, there was no such requirement. Additionally, assuming that MaBSTOA has correctly stated

its procedure, the Authority has failed to adduce evidence that "no viable candidates were

available from promotional exam sources" when Thomas, Hall, and Little were promoted. The

absence of such evidence creates a reasonable (albeit thin) inference of discrimination, inasmuch

as Plaintiff had taken and passed the exam at the time of these promotions.

Finally, there is a genuine dispute of fact as to whether MaBSTOA is correct that its

procedures allow (under some circumstances) Cleaners to be promoted to Helper without taking

an exam. According to TWU officials, Cleaners are, categorically and without exception, "not

eligible for upgrade to Helper" unless they take and pass the exam. Whalen Decl. ¶¶ 14–15; *see

also* Kateran Dep. at 73–74. These statements directly contradict MaBSTOA's director of

human resources, who stated in his affidavit that Cleaners can be promoted to Helper without an

exam if "no viable candidates are available from promotional exam sources." Kapovic Decl.

¶¶ 6, 8.[7]

---

[7]    To be clear, MaBSTOA and TWU draw a distinction between "Cleaners" (such as Plaintiff, who are classified in a job code numbered "OA217") and "Cleaner/Helpers" (who are classified in job code "OA219"). *See* Kapovic Decl. ¶¶ 6–8; Whalen Decl. ¶¶ 11–14. Both MaBSTOA and TWU agree that Cleaner/Helpers (*i.e.*, employees in job code OA219) can be promoted to Helper without taking an exam. *See* Kapovic Decl. ¶ 8; Whalen Decl. ¶ 13. Nevertheless, there is a dispute over whether Cleaners (*i.e.*, employees in job code OA217) may be promoted to Helper without the exam. *Compare* Kapovic Decl. ¶ 6 (stating that Cleaners in job code OA217 may be promoted to Helper without an exam if "no viable candidates are available"), *with* Whalen Decl. ¶ 14 ("Cleaners are not eligible for upgrade to helper" without taking an exam), *and* Kateran Dep. at 73–74 ("Q: Can a cleaner ever be promoted directly to helper? A: Not without taking the promotional helpers test."). Because Plaintiff was a Cleaner, and because there is a dispute whether Cleaners must take a promotional exam, the distinction between Cleaners and Cleaner/Helpers is not material to the Court's analysis.

Taken together, Plaintiff's evidence is sufficient, but just barely, to establish a prima facie case of gender discrimination. *See, e.g.*, *Abrams*, 764 F.3d at 251–52 (plaintiff, who was African American, established a prima facie case of discrimination by showing that nearly all employees in a higher-level position were white); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 45 (2d Cir. 2000) (an employer's "departures from procedural regularity" in the course of a promotion decision can "raise a question as to the good faith of the process" and, thus, raise an inference of discriminatory intent).[8]

### 3. MaBSTOA's Non-Discriminatory Explanation and Plaintiff's Evidence of Pretext

In response to Plaintiff's prima facie case, MaBSTOA argues that Plaintiff was not promoted to Helper because of her attendance and disciplinary record. *See* MaBSTOA Mem. of Law at 11–12; MaBSTOA Reply Mem. of Law at 1–2, 5–6. MaBSTOA's argument relies on three evaluations, conducted in May 2016, October 2016, and May 2017, which recommended

---

The Court also notes that MaBSTOA appears to have no codified or centralized procedures for internal promotions. *See* Kapovic Decl. ¶ 2. Accordingly, MaBSTOA and TWU rely on a hodgepodge of affidavits, deposition testimony, and email to describe the Authority's purported "procedures." MaBSTOA's failure to establish and follow a single, centralized set of procedures is, in large part, why there are questions of fact that defeat MaBSTOA's motion for summary judgment as to Plaintiff's failure-to-promote claims.

[8] MaBSTOA argues that the fact that Thomas, a woman, was promoted means that a reasonable juror could not find pretext under these circumstances. The Court disagrees. While the promotion of a single woman certainly cuts against the inference that there was gender discrimination at play, it does not fully explain why Plaintiff and other women were not approached regarding these promotional opportunities. Nor does it explain why Plaintiff was told to take a promotional exam when MaBSTOA's procedures did not clearly require her to do so or why others were promoted based on a determination that no other "viable candidates" were available when Plaintiff had taken and passed the exam.

Additionally, MaBSTOA argues that Plaintiff failed to disclose Thomas, Hall, and Little in Plaintiff's interrogatory responses and, thus, that the Court should not consider this evidence in deciding this motion. Assuming that Plaintiff failed to disclose these individuals, MaBSTOA has not attempted to show that the preclusion of this evidence is the appropriate remedy. *See Patterson v. Balsamico*, 440 F.3d 104, 116–18 (2d Cir. 2006) (factors that courts must weigh in deciding whether to preclude evidence based on a failure to comply with discovery obligations). MaBSTOA may, however, move to preclude this evidence at trial. Any such motion must be made well in advance of trial.

against promoting Plaintiff for these reasons. *See id.* (citing Chiu Decl. Exs. JJ, KK, LL); *see also* Def.'s 56.1 Stmt. ¶¶ 12, 36–37; Pl.'s 56.1 Stmt. ¶¶ 12, 36–37.

As an initial matter, MaBSTOA's argument fails because Plaintiff was first denied promotion to Helper sometime in late 2014, prior to the time that these evaluations were completed. *See* Paparella Decl. Ex. 51. MaBSTOA offers no evidence that its failure to promote Plaintiff in 2014 was based on her attendance and disciplinary record.[9]

As for the 2016 and 2017 evaluations, Plaintiff offers evidence that these evaluations contained inaccuracies and were not conducted in good faith. The May 2016 and October 2016 evaluations stated that Plaintiff had several unexcused absences (marked as "U/A") and an absence without leave (marked as "AWOL") on her record. *See* Chiu Decl. Exs. JJ, KK. The supervisor who prepared these evaluations, Aubrey Moses, testified that the AWOL notation likely influenced his decision not to promote Plaintiff. *See* Moses Dep. at 127. But Moses testified that he later learned that those notations were mistakes (including the AWOL notation) and, indeed, they were later removed from Plaintiff's record. *See id.* at 123–24; Chiu Decl. Ex. LL. Nevertheless, Moses testified that he did not go back and re-evaluate Plaintiff for promotion after her record was corrected because he believed that "it would not have made a difference." Moses Dep. at 159.

Putting this evidence together, a reasonable juror could infer that the explanation that Plaintiff was not promoted because of attendance and disciplinary issues is pretextual.

---

[9]     MaBSTOA offers a fourth evaluation, conducted in December 2014, which recommended against promoting Plaintiff due to her "sickness, lateness, and disciplinary record." MaBSTOA Reply Mem. of Law at 1 & n.1 (citing Chiu Reply Decl. Ex. A). MaBSTOA offered this document for the first time in its reply papers, meaning that Plaintiff did not have a chance to respond to it or attempt to show that it is pretextual. Additionally, MaBSTOA states that it "located" this document *after* Plaintiff submitted her Rule 56.1 Counterstatement, *see id.* at 1 n.1, making it unclear whether MaBSTOA properly produced this document in discovery. For all these reasons, the Court will not consider the December 2014 evaluation in deciding MaBSTOA's motion. If, however, Plaintiff wishes to preclude this evidence at trial, Plaintiff will need to make the proper motion well in advance of trial.

*See McGuinness v. Lincoln Hall*, 263 F.3d 49, 55 (2d Cir. 2001) (combined with the evidence of animus adduced at Plaintiff's prima facie case, "the falsity of the employer's explanation can, without more, be enough to support a reasonable finding" of discriminatory intent); *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 153–54 (2d Cir. 2000)).[10]

For all these reasons, MaBSTOA's motion for summary judgment is denied as to Plaintiff's gender discrimination claims.[11]

### B.    MaBSTOA's Motion Is Denied as to Plaintiff's Hostile Work Environment Claims

#### 1.    The Applicable Law

To prevail on a claim against an employer for hostile work environment under Title VII and the NYSHRL, a plaintiff must prove two elements:  first, that the "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and, second, that the defendant is vicariously liable for the discriminatory conduct.  *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015).  As to the first element, a plaintiff must show both that the conduct was objectively severe or pervasive (that is, that the conduct created "an

---

[10]    Of course, a reasonable juror could also reach the opposite conclusion.  According to MaBSTOA, between May 6, 2013 and May 5, 2014, Plaintiff took 31.3 sick days.  MaBSTOA Reply Mem. of Law at 6 n.2; *see also* MaBSTOA Mem. of Law at 11–12.  Plaintiff argues that, in violation of MaBSTOA's procedures, this sick-leave record includes leave taken pursuant to the Family and Medical Leave Act ("FMLA").  *See* Pl.'s Mem. of Law in Resp. to MaBSTOA at 17.  But even if some of those 31.3 days should have been excluded as FMLA leave, MaBSTOA offers evidence that Plaintiff still took over 10 sick days that year, many immediately before or after a regular day off.  *See* MaBSTOA Mem. of Law at 11–12.  A reasonable juror, therefore, could believe that Moses decided not to reconsider Plaintiff for promotion because he was already aware that she had a poor attendance record independent of any errors in the evaluations.

[11]    Because a reasonable juror could find that MaBSTOA engaged in discrimination based on the facts that the Court has discussed, the Court need not discuss the other evidence of discriminatory intent proffered by Plaintiff.  *See, e.g.*, Pl.'s Mem. of Law in Resp. to MaBSTOA at 4–5, 12–14, 21–22.  A great deal of this evidence is likely irrelevant, such as the allegation that Plaintiff's 2013 suspension was the product of discrimination and the fact that Plaintiff mistakenly received a termination letter in 2017.  Whether this evidence is admissible at trial can be a subject for the parties' motions *in limine*.

environment that a reasonable person would find hostile or abusive") and that the plaintiff

subjectively perceived the conduct as hostile or abusive. *Patane v. Clark*, 508 F.3d 106, 113 (2d

Cir. 2007). As to the second element, "[a]n employer's liability for hostile work environment

claims depends on whether the underlying harassment is perpetrated by the plaintiff's supervisor

or his non-supervisory co-workers." *Wiercinski*, 787 F.3d at 113. "If the harassment is

perpetrated by the plaintiff's 'non-supervisory coworkers, an employer's vicarious liability

depends on the plaintiff showing that the employer knew (or reasonably should have known)

about the harassment but failed to take appropriate remedial action.'" *Id.* (quoting *Petrosino v.

Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004)). On the other hand, if the harassment is perpetrated

by a supervisor, the employer is "strictly liable . . . unless the employer is able to establish an

affirmative defense showing that it 'exercised reasonable care to prevent and correct[] any . . .

harassing behavior' and that the plaintiff 'unreasonably failed to take advantage of any

preventive or corrective opportunities provided by the employer to avoid harm otherwise.'" *Id.*

(quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998)).

The NYCHRL imposes even broader liability for hostile work environment than Title VII

and the NYSHRL. *See Mihalik*, 715 F.3d at 110. Under the NYCHRL, "the federal severe or

pervasive standard" does not apply. *Id.* Rather, a plaintiff need only show that she was treated

"less well because of a discriminatory intent" and that the conduct rose above a "petty slight or

trivial inconvenience." *Id.* As for vicarious liability, an employer may be vicariously liable

under the NYCHRL for the acts of its employees if (1) the offending employee exercised

managerial or supervisory responsibility" over the plaintiff; (2) the employer knew of the

offending employee's discriminatory conduct and either acquiesced in it or failed to take

corrective action in response to it; or (3) the employer should have known of the offending

employee's unlawful discriminatory conduct yet failed to exercise reasonable diligence to prevent it. *Chauca v. Abraham*, 841 F.3d 86, 90 (2d Cir. 2016); *see also Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 479 (2010).

### 2. Severe or Pervasive Harassment

The evidence here is barely sufficient to satisfy this element. Several MaBSTOA employees made disparaging remarks about women to Plaintiff; one of Plaintiff's supervisors, Carlos Gonzalez, told Plaintiff that "women shouldn't work here," *see* Defs.' 56.1 Stmt. ¶ 65,[12] and other male employees frequently called female employees "bitches," *see* Grandy Decl. ¶ 108; Candia Dep. at 113; Grandy Dep. (Part I) at 35. Plaintiff also found magazines depicting naked women (specifically, *Playboy* and *Maxim* magazines) at one of her worksites (although she did not report this discovery to MaBSTOA management). *See* Def.'s 56.1 Stmt. ¶ 70; Pl.'s 56.1 Stmt. ¶¶ 21.18–21.19, 70; Chiu Decl., Ex. QQ; O'Connor Dep. at 38, 43; Grandy Decl. ¶¶ 125–126. Along those same lines, sexualized images of women (such as advertisements of women in bikinis) were hung on walls and on employees' toolboxes throughout MaBSTOA bus depots. *See* Chiu Decl., Ex. RR; Grandy Decl. at 18 n.6; Lane Decl. ¶¶ 8–10; Coppola Dep. at 23–24; Candia Dep. at 99, 127–28, 157; O'Connor Dep. at 37–40; Whalen Dep. at 159–60.[13]

---

[12] The parties dispute Gonzalez's exact words. Gonzalez testified in his deposition that he said that he "does not like working with women" but that his statement "had nothing to do with" Plaintiff. Gonzalez Dep. at 65. Plaintiff claims that Gonzalez said that "women shouldn't work here" and that the statement referred directly to Plaintiff. Grandy Decl. ¶ 62. Either statement, however, could contribute to a hostile or abusive environment and, in any event, all inferences must be drawn in Plaintiff's favor as the non-moving party.

[13] Additionally, on at least one occasion, a male co-worker and TWU official, Edgar Perez, verbally abused Plaintiff in front of her other co-workers. *See* Defs.' 56.1 Stmt. ¶¶ 49, 85; Grandy Dep. (Part I) at 60–63. In conjunction with other evidence of a hostile environment, a reasonable juror might view Perez's verbal abuse of Plaintiff as being motivated by gender-based animus, as the incident took place in front of a large group of male employees and Plaintiff was the only woman present. *See* Grandy Decl. ¶¶ 133, 139. Plaintiff also offered evidence that Perez denied her requests for scheduling changes while granting the same requests to male employees. *See* Pl.'s Mem. of Law in Resp. to TWU at 10–11. Standing alone, this evidence would not be adequate to show a gender-based hostile or abusive environment, but taken with all of the other evidence, there is a question of fact that defeats Defendant's motion for summary judgment.

Taking this evidence together, and viewing it in the light most favorable to Plaintiff, this case presents a triable issue as to whether Plaintiff suffered severe or pervasive sexual harassment.[14]

### 3. MaBSTOA's Liability for the Harassment

The Court will assume for the sake of argument that MaBSTOA's liability is governed by the higher standard applicable when harassment is perpetrated by non-supervisory co-workers.[15] Plaintiff repeatedly complained to MaBSTOA management about Gonzalez's disparaging remark and about her male co-workers calling female employees "bitches." *See* Barbieri Decl. Ex. A at 7; Chiu Decl. Exs. X, Y. MaBSTOA presents no evidence that it took any action to prevent or correct this conduct, other than having a policy that prohibits "discriminatory behavior." *See* MaBSTOA Mem. of Law at 20. Additionally, MaBSTOA took no action to stop male employees from posting sexualized images of women around the workplace, other than a memorandum from the 1990s instructing employees to take down the images. *See* Whalen Dep. at 160–61; O'Connor Dep. at 42. This memorandum clearly proved ineffectual, as the sexualized images have remained throughout MaBSTOA bus depots in recent years. *See* Coppola Dep. at 24; Candia Dep. at 128; Whalen Dep. at 159–60.[16] Based on these facts, a reasonable juror could find MaBSTOA liable for the hostile or abusive conduct in Plaintiff's workplace.

---

[14]     Because the evidence that the Court has discussed is sufficient to present a triable issue as to whether Plaintiff suffered severe or pervasive sexual harassment, the Court need not address Plaintiff's other evidence on this point, such as the evidence that a male co-worker used a urinal while she was cleaning a men's restroom.

[15]     Because Gonzalez exercised supervisory authority over Plaintiff, MaBSTOA could well be subject to a strict liability standard.

[16]     MaBSTOA asserts that its supervisors regularly conduct "walkthroughs" of their worksites to ensure that sexualized images are taken down, *see* MaBSTOA Mem. of Law at 20, but the testimony that MaBSTOA cites for this point states that many supervisors do *not* conduct these walkthroughs, *see* Whalen Dep. at 160. In any event, a reasonable juror could find that these walkthroughs were inadequate, as the images remain throughout MaBSTOA's bus depots.

For all these reasons, MaBSTOA's motion for summary judgment is denied as to

Plaintiff's claims for hostile work environment.[17]

## C.    MaBSTOA's Motion Is Granted in Part and Denied in Part as to Plaintiff's Retaliation Claims

Next, Plaintiff brings claims for retaliation, alleging two instances of retaliatory conduct:

MaBSTOA's failure to promote her to Helper sometime in late 2014 and an assignment in

September 2014 to exterminate a MaBSTOA bus infested with cockroaches. *See* Pl.'s Mem. of

Law in Resp. to MaBSTOA at 2–3, 15, 24–25.[18]

### 1.    The Applicable Law

Retaliation claims under Title VII and the NYSHRL are evaluated under the *McDonnell*

*Douglas* three-step burden-shifting analysis. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir.

2010) (citing *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).  A plaintiff

establishes a prima facie case of retaliation by showing: "(1) participation in a protected activity;

(2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a

causal connection between the protected activity and the adverse employment action." *Id.* at

---

[17]    As with Plaintiff's discrimination claims, because the Court finds that there are disputes of material fact that require Defendants' motions for summary judgment to be denied, the Court need not address Plaintiff's other evidence of an alleged hostile work environment.  The Court notes, however, that much of her evidence is likely irrelevant and inadmissible.

[18]    The Amended Complaint alleges numerous acts of retaliation, including unfavorable assignments and the denial of overtime opportunities.  Because Plaintiff's memorandum of law in response to MaBSTOA's motion addresses only the failure to promote her to Helper and the extermination assignment, *see* Pl.'s Mem. of Law in Resp. to MaBSTOA at 2–3, 15, 24–25, Plaintiff has abandoned all other theories of retaliation as to MaBSTOA. *See Camarda*, 673 F. App'x at 30; *Jackson*, 766 F.3d at 195.

To be clear, Plaintiff's responses to Defendants' Rule 56.1 Statement did discuss numerous other alleged acts of retaliation, including the failure to grant scheduling changes and an assignment to clean a bus depot restroom. *See* Pl.'s 56.1 Stmt. ¶¶ 86–96.8.  But Plaintiff's response to Defendants' 56.1 Statement fails to offer any argument as to how these acts satisfy Plaintiff's prima facie case.  In most cases, for example, Plaintiff's response does not specify whether the complained-of action followed protected activity and, if so, by how long.  Because Plaintiff fails to offer any legal explanation for how these actions constitute retaliation—and, in fact, because Plaintiff fails entirely to mention them in her memorandum of law—these alleged acts of retaliation have been abandoned. *See Camarda*, 673 F. App'x at 30; *Kovaco*, 834 F.3d at 143–44.

164. "The plaintiff's burden in this regard is *de minimis*." *Id.*

To rebut the presumption created by the plaintiff's prima facie case, a defendant must proffer "a legitimate, non-retaliatory reason for the adverse employment action." *Id.* If the defendant does so, the plaintiff must come forward with evidence to show that "retaliation was a substantial reason for the adverse employment action[s]" or that "a retaliatory motive played a part in the adverse employment actions even if it was not [their] sole cause." *Id.*

2. **MaBSTOA's Motion Is Granted as to Its Failure to Promote Plaintiff in Late 2014**

In response to MaBSTOA's motion, Plaintiff asserted for the first time that MaBSTOA's decision not to promote Plaintiff in late 2014 was an act of retaliation. The Amended Complaint does not allege that this conduct was an act of unlawful retaliation. For this reason alone, summary judgment must be granted as to this claim. *See Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint."); *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) (same) (collecting cases); *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99-CV-10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in [a plaintiff's] opposition papers, and hence such new allegations and claims should not be considered in resolving the motion.").

Additionally, even if this claim were properly raised, Plaintiff has failed to establish a prima facie case. In June 2014, Plaintiff submitted two letters complaining of discrimination to Joseph Hein and Vincent Coppola, the Superintendent and TWU Vice Chair of MaBSTOA's Quill Bus Depot, respectively. *See* Chiu Decl. Exs. X, Y. Additionally, in July 2014, Plaintiff filed a discrimination charge against MaBSTOA and TWU with the EEOC. *See* Chiu Decl. Ex. AA. These complaints are clearly protected activity. MaBSTOA was aware of these protected

activities, as "general corporate knowledge that the plaintiff has engaged in protected activity is sufficient" to establish awareness at the prima facie stage. *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 362 (S.D.N.Y. 2012) (collecting cases); *see also Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 118 (2d Cir. 2000). And a denial of a promotion is a textbook adverse employment action. *See Terry v. Ashcroft*, 336 F.3d 128, 139 (2d Cir. 2003).

Plaintiff's prima facie case founders on the fourth element of her prima facie case. Evidence of "temporal proximity" between protected activity and an adverse employment action is, without more, sufficient to make a prima facie showing of a causal connection. *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 932 (2d Cir. 2010) (per curiam). But as with all elements of Plaintiff's prima facie case, Plaintiff bears the burden of showing that temporal proximity exists. *See id.*; *Hicks*, 593 F.3d at 164. Here, Plaintiff offers an email dated August 27, 2014, in which a human resources officer asked for a "three-year evaluation" of Plaintiff because she was "being considered for promotion to Helper." Paparella Decl. Ex. 51. This email suggests that MaBSTOA considered Plaintiff for promotion during this time. But regardless of when MaBSTOA began to consider her for promotion, Plaintiff offers no evidence as to when the Authority actually made the decision not to promote her. *See* Pl.'s Mem. of Law in Resp. to MaBSTOA at 2–3, 15, 24–25. Three to four months is the outer limit of temporal proximity that will give rise to an inference of retaliation, *see Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 423 (S.D.N.Y. 2018) (collecting cases); accordingly, Plaintiff had the burden of offering evidence that MaBSTOA made the decision not to promote her sometime before September or October 2014 or, alternatively, offering other evidence of a causal connection between her protected activity and MaBSTOA's promotion decision.[19] Because Plaintiff has

---

[19]    Plaintiff's evidence shows that Helper promotions usually take place "around the time of the pick," that is, around December of each year, suggesting that MaBSTOA's decision was not made close enough in time to

offered neither, the Court grants MaBSTOA summary judgment as to this claim.[20]

### 3. MaBSTOA's Motion Is Denied as to Plaintiff's Assignment to Exterminate Bugs from a Bus

While the evidence supporting Plaintiff's claim that her assignment to spray down a cockroach-infested bus was retaliation for her protected activity is extremely thin, MaBSTOA's motion papers entirely failed to address this claim. *See* MaBSTOA Mem. of Law at 22–25; MaBSTOA Reply Mem. of Law at 10. Accordingly, MaBSTOA has not carried its burden in support of its motion, and the motion is denied.

## IV. TWU's Motion for Summary Judgment Is Granted in Part and Denied in Part

### A. Plaintiff's Claims Against TWU Are Not Barred by a Release Agreement

#### 1. Relevant Background

Before turning to the merits of Plaintiff's claims against TWU, TWU argues that Plaintiff's claims against the Union are barred by a release that Plaintiff executed in July 2016. *See* TWU Mem. of Law at 7–10; Whalen Decl. Ex. A. This argument fails.

In March 2016, Plaintiff, represented by counsel, filed an "Improper Practice Charge" against TWU with PERB, a New York State agency that regulates the conduct of public-sector labor organizations. *See* Defs.' 56.1 Stmt. ¶ 107; Pl.'s 56.1 Stmt. ¶ 107; Whalen Decl., Ex. B. The charge alleged that TWU had failed to investigate patterns of sexual harassment perpetrated

---

Plaintiff's protected activity to raise an inference of retaliation. *See* Pl.'s Mem. of Law in Resp. to MaBSTOA at 15–16.

[20] MaBSTOA's motion for summary judgment is granted as to all of Plaintiff's claims for retaliation arising out of the failure to promote her in 2014, including her claims brought under Title VII, the NYSHRL, and the NYCHRL. While the NYCHRL's causation requirement is less stringent than that of Title VII and the NYSHRL, under all three statutes, a plaintiff must show some causal connection between her protected activity and the employer's alleged retaliation. *See Mihalik*, 715 F.3d at 113 ("[A] defendant is not liable [under the NYCHRL] if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives."); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 862 (S.D.N.Y. 2013); *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 456 (E.D.N.Y. 2013). Because Plaintiff has offered no evidence at all of a causal connection, summary judgment is granted as to the claim under all three statutes.

by Union members and, therefore, that TWU had failed to provide adequate representation to Plaintiff under New York State's Public Employees' Fair Employment Act.  *See* Whalen Decl., Ex. B at 21–23.

In July 2016, Plaintiff settled her charge.  *See* Defs.' 56.1 Stmt. ¶ 109; Pl.'s 56.1 Stmt. ¶ 109; Whalen Decl., Ex. A.  Plaintiff executed a settlement agreement, which stated, first, that the settlement "shall not be construed as or constitute an admission" that TWU violated "any Federal, State or New York City laws," Whalen Decl., Ex. A ¶ 1; second, that Plaintiff agreed to "discontinue[] the instant charge with prejudice, and withdraw[] with prejudice and/or waive[] all claims which were raised or which could have been raised by the facts alleged in the charge," *id.* ¶ 3; and, third, that, in exchange for the settlement, TWU agreed to expedite a grievance that Plaintiff had previously filed with the Union's Executive Board, *id.* ¶ 2.

### 2.      The Applicable Law

A plaintiff may waive statutory discrimination claims, as long as the waiver is done knowingly and voluntarily.  *See Bormann v. AT&T Commc'ns, Inc.*, 875 F.2d 399, 402 (2d Cir. 1989).  Courts in the Second Circuit use a "totality of the circumstances" test to determine whether a waiver satisfies this standard.  *See Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437–38 (2d Cir. 1998); *Bormann*, 875 F.2d at 403.  The factors to be considered include:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Bormann*, 875 F.2d at 403.

### 3. Application to This Case

The fourth *Bormann* factor, "the clarity of the agreement," is dispositive here. The agreement stated that Plaintiff agreed to "waive[] all claims which were raised or which could have been raised by the facts alleged in the charge." Whalen Decl. Ex. A. This language is devoid of any detail about the types of claims being waived. In the context of settling a charge before the state's union-regulating agency, this language would not have fairly put Plaintiff on notice that she was releasing TWU from claims under federal, state, and local anti-discrimination laws. Even assuming that all of the other *Bormann* factors weigh against Plaintiff, the agreement here is sufficiently unclear that it does not constitute a knowing and voluntary waiver of Plaintiff's discrimination claims.[21]

A look to the totality of circumstances confirms this conclusion. Prior to filing the PERB charge, Plaintiff had filed a separate discrimination charge against TWU before the EEOC. *See* Chiu Decl. Ex. AA. The EEOC charge was still pending when Plaintiff executed the PERB settlement agreement. *See* Paparella Decl. Ex. 14.2. Nothing in the record indicates that Plaintiff understood the settlement agreement to cover her EEOC charge; to the contrary, a contemporaneous email from a TWU attorney to Plaintiff's counsel stated that TWU planned to settle the PERB charge but that the Union would handle the EEOC charge "separately." Paparella Decl. Ex. 76.[22] The totality of circumstances, therefore, suggests that Plaintiff intended

---

[21] TWU argues that the language stating that the agreement did not constitute an admission of a violation of "any Federal, State or New York City laws," Whalen Decl., Ex. A ¶ 1, means that Plaintiff intended to waive all claims that could have been brought under those laws. *See* TWU Mem. of Law at 9. This argument defies logic. That language clearly refers to there not being an admission of wrongdoing on the part of TWU; it says nothing about the scope of a waiver on the part of Plaintiff.

[22] TWU argues that this email was sent at the beginning of the parties' settlement negotiations and that, by the end of the negotiation process (a month later), the parties had agreed to settle both the PERB and the EEOC charges. *See* TWU Reply Mem. of Law at 15. But TWU cites no part of the record to support this assertion, so the Court has not considered it. In any event, assuming that TWU's recitation of facts is accurate, one would have expected a much more explicit release if the parties' intent was to resolve both the EEOC claim and the PERB claim in the same settlement agreement.

to waive only her right to bring a charge before the PERB, not her right to bring statutory

discrimination claims in federal court.

For all these reasons, Plaintiff's claims against TWU are not barred by her July 2016

settlement agreement.[23]

## B.    TWU's Motion Is Granted in Part and Denied in Part as to Plaintiff's Discrimination Claims

Plaintiff brings gender discrimination claims against TWU, arguing that the Union

discriminated against her:  first, by failing to submit two of her complaints to the Union's formal

grievance procedures; second, by failing to provide her with information material to MaBSTOA

promotion opportunities; and third, by depriving her of the opportunity to work overtime shifts.

*See* Pl.'s Mem. of Law in Resp. to TWU at 16–18, 25.  The Court will address each of these

theories in turn.[24]

### 1.    Legal Standards

Under Title VII, the NYSHRL, and the NYCHRL, a plaintiff suing a union for

discrimination must show:  "(1) [that] the Union breached its duty of fair representation to

plaintiff; and (2) that the Union's conduct was motivated by animus toward the plaintiff's

---

[23]     Because the Court finds that Plaintiff's waiver was not knowing and voluntary, the Court need not reach Plaintiff's arguments that the settlement agreement lacked consideration.  *See* Pl.'s Mem. of Law in Resp. to TWU at 13–15.

[24]     All other theories of discrimination that Plaintiff alleges against TWU in her Amended Complaint were not addressed in her response to TWU's motion and, thus, have been abandoned.  *See Camarda*, 673 F. App'x at 30; *Jackson*, 766 F.3d at 195.

     Plaintiff's memorandum of law also contains a number of assertions regarding her 2013 suspension, including that her TWU representative "refused" to attend the arbitration hearing that resulted in her suspension; that Plaintiff agreed to the suspension only at the "urging" of TWU; and that TWU failed to advise Plaintiff about the consequences of agreeing to the suspension.  *See* Pl.'s Mem. of Law in Resp. to TWU.  These allegations were not included in the Amended Complaint; in fact, the Amended Complaint does not even mention Plaintiff's 2013 suspension.  Accordingly, Plaintiff may not rely on this theory for her gender discrimination claims against TWU. *See Southwick Clothing LLC*, 2004 WL 2914093, at *6.

protected status." *Dillard v. SEIU Local 32BJ*, No. 15-CV-4132, 2015 WL 6913944, at *4

(S.D.N.Y. Nov. 6, 2015) (citing *McIntyre v. Longwood Cent. Sch. Dist.*, 380 F. App'x 44, 49 (2d

Cir. 2010)) (collecting cases); *see also Ross v. Commc'n Workers of Am., Local 1110*, No. 91-

CIV-6367, 1995 WL 351462, at *5 (S.D.N.Y. June 9, 1995), *aff'd*, 1996 WL 80688 (2d Cir. Feb.

20, 1996). A union breaches its duty of representation if (a) its failure to act "was arbitrary,

discriminatory, or in bad faith" and (b) "there was a causal connection between the union's

wrongful conduct and [the plaintiff's] injuries." *Dillard*, 2015 WL 6913944, at *4. A union's

conduct is "arbitrary" if it is "so far outside a wide range of reasonableness that is wholly

irrational." *Id.* at *5 (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45 (1998)). "A

union's acts are discriminatory when 'substantial evidence' indicates that it engaged in

discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.'" *Id.*

(quoting *Vaughn v. Airline Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010)). And "[a]

showing of bad faith requires a showing of fraudulent, deceitful, or dishonest action" by a union.

*Id.* (quoting *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001)).[25]

### 2. TWU's Motion is Granted as to Its Failure to Submit Plaintiff's Complaints to Formal Grievance Procedures

#### a. Relevant Background

Plaintiff's failure-to-grieve claims rely on two discrimination complaints that she

submitted to TWU in 2015 and 2016. *See* Pl.'s Mem. of Law in Resp. to TWU at 16–18, 25. In

---

[25]     Under the NYSHRL and NYCHRL, a plaintiff may, but need not, show a breach of the duty of fair
representation in order to bring discrimination claims against a union. *See Mohr v. United Cement Masons' Union
Local 780*, No. 15-CV-4581, 2016 WL 11263670, at *9 (E.D.N.Y. Nov. 7, 2016). A union, for example, may be
liable under these statutes based on an "aiding and abetting" theory. *See id.* As the Court discussed, however,
Plaintiff has abandoned her aiding-and-abetting theory against TWU. *See supra* Part II.

     Additionally, courts have frequently found that Title VII preempts NYSHRL and NYCHRL discrimination
claims arising out of unions' breach of the duty of fair representation. *See, e.g.*, *Dillard*, 2015 WL 6913944, at *9.
Because TWU failed to raise this argument, the Court need not address it.

December 2015, Plaintiff complained to TWU's Executive Board that her union representative, Edgar Perez, had verbally abused her in front of her co-workers. *See* Barbieri Decl. Ex. A; *see also* Defs.' 56.1 Stmt. ¶ 97; Pl.'s 56.1 Stmt. ¶ 97. Under TWU's constitution, when a Union member submits a charge that another member has violated the Union's constitution or has otherwise engaged in "conduct unbecoming," the Union must hold an internal "trial" to determine whether disciplinary action is warranted. *See* Paparella Decl. Ex. 24 at 60–61. In June 2016, the Union's Executive Board notified Plaintiff that it would not submit her complaint to a trial because the complaint did not properly state a violation of the Union's constitution. *See* Barbieri Decl. Ex. D.

In June 2016, Plaintiff asked TWU to file a grievance against MaBSTOA based on the Authority's failure to promote her to Helper. *See* Defs.' 56.1 Stmt. ¶ 104; Pl.'s 56.1 Stmt. ¶ 104; Barbieri Decl. Ex. C. On June 7, 2016, TWU declined to do so because, in TWU's view, Plaintiff had been properly denied the promotion "based on her time and attendance record." Barbieri Decl. Ex. C. At around the same time, though, TWU filed a grievance on behalf of a male MaBSTOA employee for the same failure-to-promote issue. Pl.'s 56.1 Stmt. ¶ 104.5.

### b. Plaintiff's December 2015 Discrimination Complaint

#### i. Procedural Arguments

Beginning with the December 2015 complaint, TWU offers three procedural arguments before addressing the merits of the claim.

First, TWU argues that Plaintiff failed to plead allegations relating to the December 2015 incident in the Amended Complaint. *See* TWU Reply Mem. of Law at 2. TWU is incorrect; the Amended Complaint includes a section alleging that "MaBSTOA and TWU failed to investigate the October 2015 altercation [with Perez] properly," Am. Compl. ¶¶ 138–143, and it discusses

specifically TWU's failure to take action in response to Plaintiff's December 2015 charge, *see id.*

¶¶ 140, 142.

Next, TWU argues that Plaintiff's claim is untimely. *See* TWU Reply Mem. of Law at 3. Specifically, TWU argues that Plaintiff failed to bring her claim relating to the December 2015 charge within the claim's statute of limitations, which TWU argues is four months. *See* TWU Reply Mem. of Law at 3. This argument fails, as TWU denied Plaintiff's charge in June 2016, *see* Barbieri Decl. Ex. D, and Plaintiff included this claim in her Complaint, which was filed in August 2016, *see* Compl., Dkt. 1, ¶¶ 138–143.[26]

Finally, TWU argues that Plaintiff failed to exhaust her remedies under the Union's constitution before bringing this case, as she did not appeal TWU's decision. *See* TWU Reply Mem. of Law at 4. In TWU's view, a plaintiff must exhaust a union's internal appeals processes before she may sue the union based on its breach of the duty of fair representation. *See id.* (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163–64 (1983)). This argument is wrong as a matter of law. An employee suing an employer under the National Labor Relations Act ("NLRA") for breach of a collective bargaining agreement must "exhaust any grievance or arbitration remedies provided in that collective bargaining agreement" before filing suit. *King v. New York Tel. Co.*, 785 F.2d 31, 33–34 (2d Cir. 1986); *see also Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 389 (2d Cir. 2015). But no such obligation extends to suits against unions for breach of the duty of fair representation under Title VII. *See Cooper*, 106 F. Supp. 2d at 499. Rather, "Title VII creates an independent statutory right" to sue for discrimination and, thus, a

---

[26] TWU is also incorrect that the applicable statute of limitations is four months. *See Cooper v. Wyeth Ayerst Lederle*, 106 F. Supp. 2d 479, 500 (S.D.N.Y. 2000) ("The appropriate statute of limitations for a fair representation claim under Title VII is 300 days.").

"union member need not pursue any separate contractual or statutory remedies" before bringing

suit under that statute. *Id.*[27]

### ii.     Arguments as to the Merits

TWU argues that Plaintiff has not offered sufficient evidence that the Union's failure to

submit her December 2015 complaint to an internal "trial" breached the Union's duty of fair

representation or that the decision was motivated by animus. *See* TWU Reply Mem. of Law at 5.

The Court agrees.

Plaintiff's memorandum of law offers no evidence or argument that TWU's conduct was

"arbitrary, discriminatory, or in bad faith," as a failure-to-grieve claim requires. *Dillard*, 2015

WL 6913944, at *4.  Instead, Plaintiff argues that the Union's Executive Board erred when it

found that her complaint did not allege a violation of the Union's constitution. *See* Pl.'s Mem. of

Law in Resp. to TWU at 17–18 ("Grandy's complaint, however, *did* state a claim under the

constitution." (emphasis added)).  But to show a breach of the duty of fair representation,

Plaintiff must show not only that TWU's action was wrong but that it was "wholly irrational."

*Dillard*, 2015 WL 6913944, at *4.  Plaintiff offers no facts or argument in her memorandum of

law to sustain this burden.[28]

Plaintiff also offers no evidence whatsoever to raise an inference that TWU's failure to

take her complaint to trial was motivated by animus. *See Dillard*, 2015 WL 6913944, at *4.  On

the contrary, Plaintiff admits that TWU submitted her complaint to the Union's general counsel

---

[27]     TWU has not argued that Plaintiff failed to exhaust her *administrative* remedies, that is, that Plaintiff failed to fulfill her obligation to include her claims against TWU in her EEOC charge before filing suit in this Court.

[28]     In response to Plaintiff's December 2015 complaint, TWU dispatched a high-level TWU official to Plaintiff's worksite to speak with Plaintiff and Perez, to calm tensions between the two parties, and to implement solutions for their dispute. *See* Grandy Decl. ¶ 138; Whalen Dep. 231–32, 237–39.  Given these remedial measures, no reasonable juror could find that TWU's decision not to submit the complaint to a full-scale internal trial was arbitrary.

in order to determine whether the complaint properly stated a violation of the Union's constitution. *See* Def.'s 56.1 Stmt. ¶ 99; Pl.'s 56.1 Stmt. ¶ 99. Given that Plaintiff concedes that TWU followed its normal procedures in processing her complaint, Plaintiff had the burden to come forward with some evidence suggesting that the Union's Executive Board acted with discriminatory intent. Because she has failed to do so, TWU is entitled to summary judgment on this claim.

For all these reasons, the Court grants summary judgment to TWU on Plaintiff's discrimination claim arising out of the Union's failure to submit her December 2015 complaint to formal grievance procedures.

### c. Plaintiff's June 2016 Complaint

Plaintiff's June 2016 complaint fares no better. First, Plaintiff offers no evidence that TWU's failure to grieve her promotion denial was "arbitrary, discriminatory, or in bad faith." *Dillard*, 2015 WL 6913944, at *4. In a June 2016 email, a TWU attorney told Plaintiff's counsel that the Union did not "have a basis to file a grievance" because Plaintiff's evaluations reflected a poor attendance record. Barbieri Decl. Ex. C. As the Court has discussed, the attendance record in Plaintiff's evaluations contained inaccuracies. *See supra* Part III.A.3; Pl.'s 56.1 Stmt. ¶¶ 104.12–104.16. But Plaintiff offers no evidence that TWU knew about the inaccuracies at the time that it declined to file a grievance. *See* Pl.'s Mem. of Law in Resp. to TWU at 25; Pl.'s 56.1 Stmt. ¶¶ 104–104.16. In fact, the June 2016 email from TWU expressly left open the possibility of challenging the evaluations on this ground, stating, "Unless these absences are either incorrect or fall under legal protection of some kind (the most obvious example being FMLA), the decision of [MaBSTOA] stands." Barbieri Decl. Ex. C. Plaintiff offers no evidence that, in response to the email or otherwise, she informed the Union that the evaluations were

inaccurate.[29]  Without some indication that TWU knew that the evaluations were inaccurate, no reasonable juror could conclude that TWU's failure to bring this complaint to arbitration was arbitrary, discriminatory, or in bad faith.

Plaintiff also fails to raise an inference that TWU's failure to grieve the fact that she was not promoted was motivated by discriminatory animus.  Citing the deposition testimony of a TWU official, Plaintiff asserts that the Union grieved MaBSTOA's failure to promote a male employee, purportedly showing a discriminatory difference in treatment.  *See* Pl.'s Mem. of Law in Resp. to TWU at 25 (citing Rehn Dep. 158); Pl.'s 56. Stmt. ¶ 104.5.  But Plaintiff provides no evidence that this employee was similarly situated to her in any material respect, including seniority, attendance, or disciplinary record.  The mere fact that the Union grieved MaBSTOA's failure to promote a male employee but not its failure to promote a female employee does not, without more, raise a reasonable inference that TWU's failure to process her grievance was motivated by discriminatory animus.  *See Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("A plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." (internal quotation marks omitted)); *Dillard*, 2015 WL 6913944, at *8 (collecting cases); *Von Maack v. 1199 SEIU United Healthcare Workers East*, No. 14-CV-4360, 2014 WL 5801349, at *5 (S.D.N.Y. Nov. 7, 2014) (plaintiff failed to state a claim for race discrimination against her union

---

[29]        On this point, Plaintiff cites two October 2016 emails in which TWU officials discussed Plaintiff's evaluations with MaBSTOA management.  *See* Pl.'s 56.1 Stmt. ¶¶ 104.13, 104.15 (citing Paparella Decl. Exs. 81, 87).  In one email, a MaBSTOA employee named Joseph Sorrentino sent Plaintiff's evaluations to TWU's Recording Secretary, stating, "Her sick time is correct.  They did not include the FMLA Days."  Paparella Decl. Ex. 81 at TA-1753.  In the other email, Sorrentino asked other MaBSTOA employees to remove the "AWOL" notation and to correct other inaccuracies in Plaintiff's evaluations.  Paparella Decl. Ex. 87.  Plaintiff provides no context for these emails, including who Sorrentino is or the nature of the prior communications that prompted the emails.  Assuming that Sorrentino is a TWU officer, the emails suggest that TWU properly attempted to correct Plaintiff's record and, thus, that TWU did not act arbitrarily in denying her request to submit her promotion denials to formal grievance procedures.  Thus, these emails do not change the Court's analysis.

because she did not "identify any similarly-situated black union members whose grievances were processed in a more satisfactory manner"), *aff'd*, 638 F. App'x 66 (2d Cir. 2016).

For all these reasons, TWU's motion for summary judgment is granted as to Plaintiff's discrimination claims based on the Union's failure to process her grievances.

### 3. TWU's Motion Is Granted in Part and Denied in Part as to Its Failure to Provide Plaintiff Promotion-Related Information

Plaintiff next argues that TWU discriminated against her by failing to provide her certain information relating to Helper promotions. *See* Pl.'s Mem. of Law in Resp. to TWU at 4, 7–8, 12, 25. As with Plaintiff's other claims, the types of information that TWU allegedly failed to provide are scattered throughout Plaintiff's brief without explanation or cogent argument. *See id.*

It is first worth clarifying the scope of TWU's responsibility to provide its members with information about MaBSTOA promotions. At the times relevant to this case, MaBSTOA's process for Helper promotions, and TWU's role in that process, are extremely unclear.[30] It appears that MaBSTOA management would approach TWU officials to inform them that Helper positions were available; the TWU officials would then approach Cleaners to ask if they were interested in the positions. *See* Grandy Decl. ¶ 34; Rehn Dep. (Part I) at 149–50; Paparella Decl. Ex. 92; Whalen Decl. ¶ 9. If a Cleaner expressed interest, TWU would submit the Cleaner's name to MaBSTOA management for consideration. *See* Rehn Dep. (Part I) at 149–50; Paparella Decl. Ex. 92. Put differently, the record supports a reasonable inference that Cleaners would not

---

[30] That lack of clarity redounds to TWU's detriment at this stage of the proceedings, as the Union is the moving party.

be considered for promotion to Helper unless and until they were approached by TWU officials with information about Helper vacancies.[31]

### a. TWU's Motion Is Denied as to Its Failure to Provide Plaintiff Information About Helper Vacancies in 2013 but Granted as to Its Failure to Do So Between 2014 and 2017

Plaintiff presents sufficient evidence for a reasonable juror to conclude that, in 2013, TWU failed to provide her with information about Helper vacancies and thereby deprived her of the opportunity to be considered for promotion. In 2013, Plaintiff and other female Cleaners asked Taramchand Kateran, their Union representative, to keep them informed about opportunities to be promoted to Helper. *See* Pl.'s Mem. of Law in Resp. to TWU at 6. Kateran failed to do so; instead he approached two male Cleaners about the promotion opportunities. *See* Grandy Decl. ¶ 35. The two male Cleaners were promoted to Helper, and Plaintiff was not considered for promotion. *See* Grandy Decl. ¶ 35; Kapovic Decl. ¶¶ 4, 8.

Based on Kateran's conduct,[32] a reasonable juror could infer that, in 2013, TWU acted arbitrarily in approaching Cleaners for promotions and that the Union's conduct deprived Plaintiff of the opportunity to be considered for promotion during this time. Put differently, there is a genuine dispute of fact as to whether TWU breached its duty of fair representation to Plaintiff and whether there is a causal connection between that breach and Plaintiff's injury.

---

[31] TWU argues that Plaintiff is improperly attempting to hold the Union liable for MaBSTOA's failure to promote her. *See* TWU Mem. of Law at 13; TWU Reply Mem. of Law at 9, 11–12. In TWU's view, MaBSTOA, as Plaintiff's employer, had exclusive control over these promotion decisions, and, thus, TWU should not liable for the promotion denials. *See id.* But it is undisputed that TWU had a role in the promotion process: specifically, to inform Union members of the existence of Helper vacancies and to solicit employees' interest in being promoted. *See, e.g.*, Whalen Decl. ¶ 9 (affidavit from a high-level TWU official stating that TWU had "a general responsibility to provide members with information regarding promotional and upgrade opportunities"). Thus, to the extent that TWU breached its duty of fair representation when fulfilling that role, Plaintiff has satisfied this element of her prima facie case.

[32] There does not appear to be any dispute that TWU is vicariously liable for Kateran's conduct. Kateran was an elected TWU official, and Plaintiff presented evidence that he approached Cleaners to solicit interest in promotions in his capacity as a Union representative. *See* Defs.' 56.1 Stmt. ¶ 11; Pl.'s 56.1 Stmt. ¶ 11; Kateran Dep. At 9–10, 74–75, 80.

Further, Kateran's differential treatment of male and female employees raises a thin but reasonable inference of discriminatory animus. For all these reasons, TWU's motion for summary judgment on Plaintiff's discrimination claim is denied as to the Union's failure to provide Plaintiff with information about Helper vacancies in 2013.

Plaintiff has not, however, offered evidence that TWU failed to keep her informed about Helper vacancies any time after 2013. To the contrary, Plaintiff was considered for promotion several times between 2014 and 2017 (showing that any information about vacancies that TWU may have withheld during this time could not have been causally connected to MaBSTOA's failure to promote Plaintiff). *See, e.g.*, Paparella Decl. Ex. 51; Chiu Decl. Exs. JJ, KK, LL. Thus, to the extent that Plaintiff argues that TWU failed to provide her information about Helper vacancies any time after 2013, TWU's motion for summary judgment is granted.

### b. TWU's Motion Is Granted as to Its Failure to Provide Plaintiff Other Promotion-Related Information

Aside from information about Helper vacancies, Plaintiff complains about TWU's failure to provide her a plethora of other information relating to Helper promotions including: (1) that she was eligible to apply for the promotion, even though she was a reclassified bus operator, *see* Pl.'s Mem. of Law in Resp. to TWU at 4, 7, 25; (2) that she was "#1 on the list" of eligible candidates for Helper promotions, *see id.* at 8, 12, 25; (3) that she had been considered for promotion numerous times, *see id.* at 25; and (4) that, in 2012, she could attend a Helper training class, *see id.* at 4.

All of these arguments fail because Plaintiff offers no evidence that the withholding of this information is causally connected to her injuries. Plaintiff nowhere explains how TWU's

failure to provide this information deprived her of the opportunity to be considered for promotion to Helper or how it otherwise harmed her chances of being promoted.[33]

Additionally, Plaintiff's claims fail because Plaintiff has not raised a reasonable inference that this information was withheld based on animus. Plaintiff's memorandum of law cites no evidence that TWU provided this information to similarly situated male Cleaners, that TWU officials made disparaging remarks evincing a discriminatory intent to withhold this information, or any other evidence of an animus-based motivation.[34] Absent this sort of evidence, Plaintiff's claim fails. *See Dillard*, 2015 WL 6913944, at *5 (collecting cases).

For all these reasons, TWU's motion for summary judgment on Plaintiff's discrimination claims is denied as to the Union's failure to provide Plaintiff information about Helper vacancies in 2013; granted as to its failure to do so between 2014 and 2017; and granted as to its failure to provide any other types of promotion-related information.

### 4. TWU's Motion Is Granted in Part and Denied in Part as to Its Denial of Overtime

Turning to Plaintiff's next theory of discrimination, Plaintiff argues that TWU repeatedly denied her the opportunity to work overtime. In brief, while the evidence supporting Plaintiff's

---

[33] On the contrary, for example, Plaintiff was considered for promotion in late 2014, during the time that TWU allegedly failed to tell her that she was "#1 on the list" of eligible candidates. *See* Paparella Decl. Ex. 51.

[34] In one instance, Plaintiff does attempt to show animus, but her argument fails. Plaintiff alleges that TWU officials incorrectly told her that she was ineligible for promotion to Helper because she had been reclassified to Cleaner from her prior position as a bus operator. *See* Grandy Decl. ¶¶ 27–29. Plaintiff offers evidence that TWU did not provide this misinformation to a male employee who had also been reclassified, purportedly raising an inference of animus. *See id.* But Plaintiff provides no information that even remotely shows that the male employee was similarly situated to her in any material respect, as the law requires. *See, e.g.*, *Von Maack*, 2014 WL 5801349, at *5. Furthermore, bus operators are often reclassified for disciplinary infractions, which render them ineligible for promotion to Helper; Plaintiff admits that the TWU officials who told her she was ineligible were likely acting under the good-faith assumption that she had been reclassified for disciplinary infractions. *See* Grandy Decl. ¶ 28; Grandy Dep (Part II) at 33–34. For all these reasons, no reasonable juror could find that TWU's incorrect information about Plaintiff's eligibility was motivated by animus.

claims is extremely thin, they (in part) survive summary judgment because TWU's arguments are bare-bones, conclusory, and lack citations to the record.

### a.    TWU's Process for Distributing Overtime

As an initial matter, the Court notes that TWU's role in distributing overtime among MaBSTOA employees is—like almost all of the TWU and MaBSTOA processes discussed in the parties' motion papers—unclear.  Plaintiff offers evidence that each MaBSTOA bus depot had its own system for distributing overtime.  *See* Coppola Dep. at 90 ("Q: Are the rules of overtime different at every depot?  A: Somewhat.  Each depot kind of makes their own rules, yes.  What suits the depot.").  At some depots, MaBSTOA supervisors tell the depot's TWU representatives the amount of overtime needed for a particular day, and the TWU representatives distribute the available overtime among Union members.  *See* Defs.' 56.1 Stmt. ¶ 42; Pl.'s 56.1 ¶ 42; Grandy Decl. ¶ 42; Whalen Decl. ¶¶ 22–23; Rehn Dep. (Part I) at 90–100, 125.  At other depots, Union members sign up for available overtime on a publicly posted sign-up sheet.  *See, e.g.*, Grandy Decl. ¶ 84; Whalen Decl. ¶ 23; Coppola Dep. at 94–97; Kateran Dep. at 22–24, 55; Paparella Decl. Ex. 48.  TWU officials distribute overtime among employees based on a variety of factors, including, but not limited to, seniority, the number of hours worked in a given day, and the need to "even out" overtime among Union members.  *See, e.g.*, Whalen Decl. ¶ 23; Coppola Dep. at 90–93; Rehn Dep. (Part I) at 94–100.

### b.    TWU's Denial of Overtime at the Manhattanville Bus Depot

Plaintiff's memorandum of law points to instances in which TWU denied her overtime at MaBSTOA's Manhattanville Bus Depot (in September and October 2014), *see* Pl.'s Mem. of

Law in Resp. to TWU at 8–9, and at the Quill Bus Depot (between January and July 2014), *see id.* at 6–7.[35]

Beginning with the Manhattanville Depot, Plaintiff asserts that she repeatedly added her name to the depot's overtime sign-up sheet but that male Cleaners consistently received overtime instead of her, even when they did not request it. *See* Grandy Decl. ¶¶ 84, 88–89; Grandy Dep. (Part I) at 157–58. When Plaintiff complained to her Union representative about this, the representative said that he had not previously "noticed" Plaintiff's name and that he would begin assigning her overtime. *See* Grandy Decl. ¶¶ 87–88. The representative also said that Plaintiff had not received overtime because he thought that she was only temporarily assigned to Manhattanville. *See id.* ¶ 87.

Despite this conversation, the Union representative continued to distribute overtime to male Cleaners who had not requested it, rather than to Plaintiff, who had. *See id.* ¶¶ 88–89. While this evidence is exceedingly thin, it is just barely sufficient for a reasonable juror to infer that TWU acted arbitrarily in distributing overtime shifts at the Manhattanville Depot—and thereby breached its duty of fair representation to Plaintiff—and that it did so based on animus. *See Weinstock*, 224 F.3d at 45 ("departures from procedural regularity" can raise an inference of discriminatory intent); *McGuinness*, 263 F.3d at 55 ("the falsity of the employer's explanation can, without more, be enough to support" a finding of discrimination).

TWU offers only conclusory arguments in response to this evidence. *See* TWU Mem. of Law at 14; TWU Reply Mem. of Law at 6–7. For example, TWU argues that it distributes

---

[35] Any allegations that TWU discriminated against Plaintiff by denying her overtime on other occasions are not argued in Plaintiff's memorandum of law and have been abandoned. *See Camarda*, 673 F. App'x at 30; *Jackson*, 766 F.3d at 195. In particular, the Court notes that it is undisputed that Plaintiff repeatedly declined overtime opportunities while working at the Ninth Avenue Bus Depot. *See* Grandy Decl. ¶¶ 110, 119. Thus, even if Plaintiff had argued that TWU discriminated against her by depriving her of overtime at the Ninth Avenue Depot, the Court would likely have granted summary judgment to TWU on this claim.

overtime strictly according to the number of hours that members work and that Plaintiff has failed to come forward with evidence that TWU failed to follow this procedure. *See* TWU Mem. of Law at 14. This argument fails for several reasons: TWU does not cite to any part of the record in support of its argument; the premise of its argument is contradicted by the deposition testimony of TWU officials that a number of factors are considered in distributing overtime, including seniority and the need to "even out" overtime among Union members, *see, e.g.*, Coppola Dep. at 90–93; Rehn Dep. (Part I) at 94–100; TWU fails to explain the procedural irregularity that Plaintiff, who consistently added her name to the overtime sign-up sheet, was passed over for overtime in favor of employees who did not sign up for overtime, *see* Grandy Decl. ¶¶ 87, 89; and TWU fails to address the Union representative's statement that Plaintiff was not given overtime because she was only temporarily assigned to the depot (particularly in light of Plaintiff's assertion that temporary status does not disqualify an employee from overtime, *see id.* ¶ 87).

Next, TWU argues that Plaintiff "failed to identify a single date she was denied overtime." TWU Reply Mem. of Law at 6–7. TWU is incorrect; Plaintiff's declaration lists several dates in October 2014 when Cleaners who did not request overtime received it over her. *See* Grandy Decl. ¶ 89.

TWU also argues that the Manhattanville Bus Depot could not have been "such a hostile environment" to Plaintiff because Plaintiff voluntarily chose to work at that location. *See* TWU Reply Mem. of Law at 7. This argument borders on frivolous. Even if Plaintiff could have predicted that she would be denied overtime shifts at Manhattanville based on her gender, that knowledge would not exonerate TWU from liability.

36

Finally, TWU argues that one of the Union members who received overtime over Plaintiff during this time was a woman. *See* TWU Mem. of Law at 14. While there has been little evidence submitted regarding the number of overtime hours distributed, a reasonable fact finder could conclude that distributing overtime to one, single woman is too little to overcome the inference of discrimination that arises from TWU's departure from procedural regularity. The Court notes, however, that the evidence of animus on this claim is exceedingly thin.

For all these reasons, TWU's motion for summary judgment is denied as to Plaintiff's discrimination claims based on the Union's denial of overtime shifts at the Manhattanville Bus Depot.

### c.    TWU's Denial of Overtime at the Quill Bus Depot

Next, Plaintiff argues that for the first few months of her tenure at the Quill Depot, male Cleaners consistently received overtime and she did not. *See* Pl.'s Mem. of Law in Resp. to TWU at 6–7. In Plaintiff's view, TWU's failure to provide her overtime during this period constitutes discrimination. *See id.* But Plaintiff offers no evidence that she asked for overtime during this period. *See* Grandy Decl. ¶ 42. It is not clear, then, that TWU "denied" her overtime, inasmuch as Plaintiff has provided no evidence that she sought overtime. Additionally, a few months later, Plaintiff did ask the Depot's TWU representative for overtime, and the Union representative almost immediately offered it to her. *See id.* ¶ 44. Accordingly, no reasonable juror could conclude that this representative was motivated by animus during the earlier period when Plaintiff did not receive overtime.[36]

---

[36]    Plaintiff argues that the only reason the TWU official awarded her overtime was that "no one else was willing to complete the assignment." Grandy Decl. ¶ 44. Plaintiff offers no evidence to support this conjecture and, even if true, the fact remains that TWU awarded Plaintiff overtime at the Quill Bus Depot when she asked for it.

Plaintiff also argues that MaBSTOA's Kingsbridge Bus Depot, where Plaintiff worked between February and December 2013, "failed to preserve [its] overtime records." Pl.'s Mem. of Law in Resp. to TWU at 6. But Plaintiff's allegations that TWU failed to provide her overtime shifts are limited to the Quill and Manhattanville Bus

For all these reasons, TWU's motion for summary judgment is granted as to Plaintiff's discrimination claims based on the Union's denial of overtime at the Quill Bus Depot.

### 5. Other Allegations of TWU's Discrimination

Finally, Plaintiff's memorandum of law makes numerous other allegations against TWU. While Plaintiff does not appear to allege that they constitute unlawful discrimination, the Court will pause to note that none is actionable under the anti-discrimination laws.

First, Plaintiff asserts that TWU failed to provide her proper guidance and representation for her meeting with MaBSTOA's Equal Employment Opportunity ("EEO") office. *See* Pl.'s Mem. of Law in Resp. to TWU at 7. This argument fails: Plaintiff brought her personal attorney to this meeting, *see* Grandy Decl. ¶ 74, meaning that TWU's failure to provide her legal representation for the meeting did not cause her any injury.

Next, Plaintiff asserts that TWU failed to "do anything" when MaBSTOA assigned her to exterminate a bus infested with cockroaches. *See* Pl.'s Mem. of Law in Resp. to TWU at 10. Plaintiff concedes that she did not complain to TWU about this assignment; rather, she overheard another Union member telling her Union representative about it. *See id.*; *see also* Grandy Decl. ¶ 92. Plaintiff, therefore, has not shown that TWU acted arbitrarily in failing to follow up on the complaint, when she did not bother to complain about it herself.

Finally, Plaintiff asserts that TWU "did nothing" when MaBSTOA gave her a "dangerous" assignment that caused her "severe injury." *See* Pl.'s Mem. of Law in Resp. to TWU at 11. Once again, Plaintiff's memorandum of law cites to no evidence to show that Plaintiff asked the Union to take action in response to this assignment.

---

Depots. Nothing in the Amended Complaint alleges that TWU failed to provide Plaintiff overtime shifts at the Kingsbridge Bus Depot. The allegation about Kingsbridge's failure to preserve overtime records is, therefore, wholly irrelevant.

**C.    Summary Judgment Is Granted as to Plaintiff's Hostile Work Environment Claims Against TWU**

**1.    The Applicable Law**

The standards for a union's liability for hostile work environment are different than those governing the liability of an employer.  Under Title VII, a union may not "cause or attempt to cause an employer to discriminate against an individual in violation of this section."  42 U.S.C. § 2000e–2(c)(3).  To prove a claim under this theory, a plaintiff must show (1) the existence of a hostile work environment, (2) that a union representative caused or attempted to cause the hostile work environment, and (3) that the representative's conduct may properly be imputed to the union.  *See Agosto v. Correctional Officers Benevolent Ass'n*, 107 F. Supp. 2d 294, 307 (S.D.N.Y. 2000).  As to the third prong, a plaintiff must show (a) that "the union representative's conduct related to union activity and that therefore, in acting in such a manner, the representative breached the duty of fair representation," *Agosto*, 107 F. Supp. 2d at 308, and (b) that the union is vicariously liable for the representative's conduct, *see Langford v. Int'l Union of Operating Engineers, Local 30*, 765 F. Supp. 2d 486, 500 (S.D.N.Y. 2011).  As to this second element, courts apply the same standards of vicarious liability applicable to employers.  *See id.*[37]

The case law governing a union's liability for hostile work environment under the NYSHRL and NYCHRL is less clear.  Most cases, however, hold that NYSHRL and NYCHRL claims against a union "are subsumed by the duty of fair representation when the gist of the claim is the failure to represent the plaintiff in a fair and non-discriminatory manner." *Gallagher v. AEG Mgmt. Brooklyn, LLC*, No. 16-CV-4779, 2017 WL 2345658, at *7 (E.D.N.Y.

---

[37]    Specifically, "if the harassment is perpetrated by the plaintiff's non-supervisory coworkers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action."  *Wiercinski*, 787 F.3d at 113.  If the harassment is perpetrated by a supervisor, the employer is strictly liable unless it can establish the *Faragher-Ellerth* affirmative defense.  *See id.*

May 30, 2017) (collecting cases).  Put differently, claims brought against unions under the state

and city anti-discrimination statutes that arise out of the union's capacity as the plaintiff's

representative "require[] as a prerequisite a finding that [the union] breached its duty of fair

representation."  *Id.*[38]

### 2.        Application to This Case

### a.        Inadmissible Evidence

As an initial matter, a large number of Plaintiff's assertions against TWU are based on

inadmissible hearsay.  In particular, Plaintiff asserts that numerous employees called her a

"bitch" and a "letter-writer" before she arrived at the Ninth Avenue Depot, *see* Pl.'s Mem. of

Law in Resp. to TWU at 11 (citing Grandy Decl. ¶¶ 108–109); that one of her union

representatives, Edgar Perez, instructed male employees to "isolate" another female Cleaner and

to "make her feel uncomfortable," *id.* (citing Grandy Decl. ¶ 107); that a male employee said that

this female Cleaner had been "busting his balls," *id.* (citing Grandy Decl. ¶ 118); that one male

employee had "depicted" Plaintiff to another employee as "an angry black ghetto woman," *id.*

(citing Grandy Decl. ¶ 118); that a male employee said that women are "all trying to take our

jobs away," *id.* at 20 (citing Grandy Decl. ¶ 55); and that a female employee found male

employees watching pornography on MaBSTOA premises, *see* Grandy Decl. ¶ 58(c).  Plaintiff's

memorandum of law provides no citations for these assertions other than her own declaration;

that declaration, in turn, states that Plaintiff was not present when these things occurred and that

Plaintiff learned about them from other employees.  These assertions are, therefore, inadmissible

---

[38]        As the Court has discussed, a breach of the duty of fair representation is not an element of all NYSHRL and
NYCHRL claims.  *See Dillard*, 2015 WL 6913944, at *4.  Here, however, Plaintiff argues that TWU should be
liable for hostile work environment based on its failure to support female members who accuse other members of
sexual harassment.  *See* Pl.'s Mem. of Law in Resp. to TWU at 21–24.  This theory clearly arises out of the duty of
fair representation.  Additionally, as the Court has discussed, Plaintiff has abandoned an aiding-and-abetting theory
under these statutes.  *See supra* Part II.

hearsay. And to the extent that Plaintiff's memorandum of law fails to cite to other parts of the record, the Court will not "engage in an exhaustive search of the record" for evidence to support her claims. *Jones*, 435 F. Supp. 2d at 259.

Plaintiff also makes a number of assertions relating to Anthony Garguilo and Neil Noble, two male cleaners whom Plaintiff claims "harassed" her. Pl.'s Mem. of Law in Resp. to TWU at 3. Plaintiff claims that Garguilo had been demoted for making a disparaging remark to a female bus passenger and that he made racist remarks to other MaBSTOA employees; Plaintiff cites in support, however, only her own declaration, and the declaration acknowledges that Plaintiff has no personal knowledge of the incidents. *See id.* (citing Grandy Decl. ¶ 22 ("I was told he said this.")). Plaintiff also claims that Garguilo told other employees that he was going to "get [Plaintiff] in trouble for not doing her work." *Id.* (citing Paparella Decl. Exs. 36, 38; Grandy Decl. ¶ 25). In support, Plaintiff cites her own declaration and two written statements by MaBSTOA employees, but all three items of evidence make clear that Plaintiff and the employees had no first-hand knowledge of Garguilo's statement. *See id.*

**b.     Conduct Unrelated to Union Activity**

Turning to the admissible evidence, Plaintiff's claim against TWU relies on much of the same conduct as her claim for hostile work environment against MaBSTOA. *See supra* Part III.B.2. Plaintiff's claim against TWU fails, however, because she fails to present evidence that this conduct was related to union activity or perpetrated by union representatives.

First, Plaintiff argues that on two occasions, male employees used a restroom while Plaintiff was cleaning it and, in one instance, used a urinal directly in Plaintiff's view. *See* Pl.'s Mem. of Law in Resp. to TWU at 7, 20. According to Plaintiff, TWU "failed to intervene" to stop this behavior. *Id.* Plaintiff, however, offers no explanation why TWU had a duty to intervene in this conduct, inasmuch as the conduct was unrelated to the Union's activities (such

as shift scheduling, the distribution of overtime, and so forth). In other words, Plaintiff offers no reason why TWU's failure to intervene in this conduct constituted a breach of its duty of fair representation toward her. *See Agosto*, 107 F. Supp. 2d at 308.

Furthermore, even if this conduct were related to union activity, no reasonable juror could find TWU vicariously liable, as TWU took appropriate remedial action in response to these incidents.[39] After the first incident, Plaintiff's TWU representative, Vincent Coppola, held a meeting and instructed all Union members on site not to enter the men's restroom while a female Cleaner was cleaning it. *See id.*; Grandy Decl. ¶ 54. When male members expressed "irritation" at this instruction, Coppola pressed the case and further explained why they should not enter the restroom while it was being cleaned. *See* Coppola Dep. at 73.[40] After the second incident, Coppola spoke directly with the employee who had entered the restroom. *See* Grandy Decl. ¶ 57; Coppola Dep. at 72.[41] Under these circumstances, even if this conduct had related to

---

[39]    Plaintiff offers no evidence that the employees who used the restroom were Union supervisors; thus, a strict liability standard does not apply here.

[40]    Citing her own declaration, Plaintiff asserts that male employees became "incensed" during this meeting and insisted that female employees not clean the men's restroom. *See* Pl.'s Mem. of Law in Resp. to TWU at 20 (citing Grandy Decl. ¶ 55). But Plaintiff concedes that she was not present at this meeting, *see* Grandy Decl. ¶ 54; thus, her assertions about what took place are inadmissible hearsay. Plaintiff also cites to Coppola's deposition for this point, but Coppola testified only that male employees expressed "irritation" during the meeting because a temporary closure of the men's restroom would force them to use a restroom more than two blocks away. Pl.'s Mem. of Law in Resp. to TWU at 20 (citing Coppola Dep. at 73). In short, the admissible evidence of the conduct of male employees during this meeting does not support Plaintiff's claim of hostile work environment.

    Plaintiff also asserts that Coppola deliberately "misidentified" one of the male employees who entered the restroom while Plaintiff was cleaning it. Pl.'s Mem. of Law in Resp. to TWU at 7. Plaintiff cites no evidence for this assertion, other than the fact that Coppola told her that the employee was named "Tyronne Coefield" and that during Coefield's deposition, Plaintiff stated that he was not the person who entered the restroom while she was cleaning it. *Id.* (citing Grandy Decl. ¶ 53; Coppola Dep. at 35). This evidence does not establish that Coppola deliberately misidentified Coppola or otherwise lied to Plaintiff.

[41]    Plaintiff argues that Coppola "defended" this employee, citing to an assertion in her declaration that Coppola told her that the employee was "a nice guy" and that the incident was the result of a "misunderstanding." *See* Pl.'s Mem. of Law in Resp. to TWU at 7, 20 (citing Grandy Decl. ¶ 57). But Plaintiff concedes that Coppola discussed the incident with the employee before telling her this. *See* Grandy Decl. ¶ 57. Coppola's statements, therefore, do not contradict the Court's finding that he took appropriate remedial action in response to the incident.

TWU's activities and implicated the Union's duty of fair representation (which it did not), no reasonable juror could find TWU vicariously liable for this conduct.

Next, Plaintiff relies on evidence that male MaBSTOA employees hung sexualized images of women around the workplace and that they made a number of disparaging remarks about women, including calling female co-workers "bitches" and asking why a female Cleaner would want a such a "dirty job."  Pl.'s Mem. of Law in Resp. to TWU at 3, 7, 11, 19.  Aside from a "pin-up calendar of women" that one of Plaintiff's Union representatives placed in his office, however, Plaintiff offers no evidence that the employees who hung these images were TWU members or representatives.  *See id.*  Nor does Plaintiff explain how this conduct related to union activity or why TWU had a duty to stop it.

Additionally, Plaintiff asserts that two male cleaners Anthony Garguilo and Neil Noble "harassed" her, but she provides no admissible evidence to support this conclusory assertion. Pl.'s Mem. of Law in Resp. to TWU at 3–4.  Even if she had, Plaintiff offers no reason to believe that this harassment related to TWU's activities or responsibilities.

In sum, while Plaintiff has proffered enough facts for a reasonable juror to find her employer liable for hostile work environment, *see supra* Part III.B, many of those facts do not relate in any way to TWU's activities, roles, or responsibilities.  Accordingly, Plaintiff has not shown that TWU breached its duty of fair representation to her by failing to prevent or correct this conduct.  While the Second Circuit case law on the issue is thin, the preponderance of authority suggests that TWU cannot be liable for hostile work environment under Title VII, the NYSHRL, or the NYCHRL for conduct that does not fall within its duty of fair representation. *See Agosto*, 107 F. Supp. 2d at 308 ("[F]or a union representative's role in causing or attempting to cause a hostile work environment to be properly imputed to a union, a plaintiff must show not

only that the union had actual or imputed knowledge of the improper conduct, but also that the union representative's conduct related to union activity and that therefore, in acting in such a manner, the representative breached the duty of fair representation."); *see also Johnson v. Int'l Longshoreman's Ass'n, Local 815 AFL-CIO*, 520 F. App'x 452, 453–54 (7th Cir. 2013) ("A union is liable under Title VII for discriminating against its members when performing union functions, such as job referrals, but it is not liable for an employer's actions." (citations omitted)); *Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 832 (8th Cir. 2002) ("Though the Unions were prohibited from causing or assisting unlawful discrimination by [the plaintiff's] employer, nowhere in [Title VII] do we find language imposing upon unions an affirmative duty to investigate and take steps to remedy employer discrimination."); *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 95–96 (3d Cir. 1999) ("While a union may be held liable under Title VII, the record here does not demonstrate that the Union *itself* instigated or actively supported the discriminatory acts allegedly experienced by the appellants.  Therefore, the Union is not liable."); *Gallagher*, 2017 WL 2345658, at *7 ("NYCHRL claims against a union are subsumed by the duty of fair representation when the gist of the claim is the failure to represent the plaintiff in a fair and non-discriminatory manner." (collecting cases)); *Oparaji v. United Fed'n of Teachers*, 418 F. Supp. 2d 139, 149 n.2 (E.D.N.Y. 2006); *Yarde v. Good Samaritan Hospital*, 360 F. Supp. 2d 552, 563 (S.D.N.Y. 2005).

Plaintiff argues that TWU should be held liable for conduct unrelated to union activity because the Union "encourage[d]" the hostile work environment through its policy of protecting members who are accused of sexual harassment, rather than supporting members who complain about sexual harassment.  Pl.'s Mem. of Law in Resp. to TWU at 24.  Citing the depositions and affidavits of numerous TWU officials, Plaintiff asserts that TWU has a policy of defending

members facing discipline from management for gender-based discrimination but that the Union does not advocate for or otherwise support members who are the victims of discrimination. *See id.* at 21–24. In Plaintiff's view, this "per se discriminatory stance" should subject TWU to liability for *all* conduct of its members, even if that conduct is unrelated to TWU's activities. *See id.*

The Court disagrees. Plaintiff cites no authority to support this extremely broad standard of liability other than *Agosto*, 107 F. Supp. 2d at 308. *See* Pl.'s Mem. of Law at 20–24. As the Court has discussed, *Agosto* expressly requires that the offending union representative's conduct "relate to union activity," such that the conduct constitutes a breach of the duty of fair representation, in order for the conduct to be properly attributed to the union. 107 F. Supp. 2d at 308. And most cases in which unions have been held liable involved situations in which the union was directly responsible for creating a hostile work environment—rather than responsible through more tacit tolerance of that environment. *See, e.g.*, *Dixon v. Int'l Brotherhood of Police Officers*, 504 F.3d 73, 85 (1st Cir. 2007) (finding a union liable for "a case of discrimination within the union, by union members (including members of [its] executive board), under the supervision and acquiescence of [its] president"); *Scott v. City of N.Y. Dep't of Correction*, 641 F. Supp. 2d 211, 224–25 (S.D.N.Y. 2009) (finding a union liable for hostile work environment when its president physically assaulted Plaintiff by putting his tongue in her mouth), *aff'd*, 445 F. App'x 389 (2d Cir. 2011); *Agosto*, 107 F. Supp. 2d at 297–98, 308 (holding a union liable for the conduct of a representative who "used his position as a union delegate" to obtain personnel records that he used to harass plaintiff and who caused her employer to discriminate against her during a labor-management meeting).

More fundamentally, the Court is hard-pressed to find that a union may be liable for a hostile environment through no action other than a policy of defending members facing discipline from their employer, particularly because defending employees during disciplinary proceedings is a typical union function. Absent clearer authority, this Court will not impose such a broad standard of liability.

### c. Conduct Related to Union Activity

Focusing on the evidence related to TWU's activities, the discussion in Plaintiff's memorandum of law is limited to: an October 2015 incident in which one of her Union representatives, Edgar Perez, verbally abused her; a remark from her supervisor (and TWU member), Carlos Gonzalez, that "women shouldn't work here"; a remark from another Union representative, Michael Rehn, that "TWU had never had a woman rise to Chassis Maintainer," a high-level position in MaBSTOA's Maintenance Division; and the assertion that male TWU members "created loud sexual sounds on the public announcement speaker" where a different female Cleaner, Karena Lane, was working (before Plaintiff began working at that worksite).[42] *See* Pl.'s Mem. of Law in Resp. to TWU.

This evidence of isolated, sporadic remarks is insufficient to state a claim for hostile work environment under Title VII, the NYSHRL, or the NYCHRL. Perez shouted at Plaintiff in front of a large group of employees and, during the incident, Perez hit a nearby car out of frustration. *See* Grandy Decl. ¶¶ 133–136. But the admissible evidence connecting this incident to gender-based animus is extremely thin, limited to the facts that Plaintiff was the only woman

---

[42] Lane makes a number of other assertions against TWU, including that: a TWU member made a racist remark to her; that Perez refused to stop other TWU members from smoking (even though the smoking irritated Lane, who has asthma); that Perez told her, "I better not see you on your phone"; and that unknown employees added soap to a cleaning machine, causing it to overflow. Lane Decl. ¶¶ 11, 14–23, 26–32. Neither Lane nor Plaintiff offers any evidence to show that any of this conduct was motivated by gender-based hostility.

present during the incident, that Perez had recently denied her a scheduling change (while granting a male employee the same change), and that Perez subsequently said that "[a]ll [Plaintiff] does is write letters." *See* Pl.'s Mem. of Law in Resp. to TWU at 10–11; Grandy Decl. ¶¶ 100–101, 133, 139. This incident is insufficient standing alone, even under the more liberal NYCHRL standard.[43] The other incidents do not save Plaintiff's claim; in particular, Rehn's remark was a neutral, factual statement devoid of any evidence of gender-based animus, and the sexual sounds made to Lane over the loudspeaker took place before Plaintiff was working at that worksite. Under these circumstances, Plaintiff has not stated a claim for hostile work environment.

For all these reasons, TWU's motion for summary judgment is granted as to Plaintiff's hostile work environment claims.

---

[43] Plaintiff also asserts that prior to her arrival at the Ninth Avenue Depot, "someone" (presumably, Perez) told other employees that Plaintiff was a "bitch." Pl.'s Mem. of Law in Resp. to TWU at 11 (citing Grandy Decl. ¶¶ 108–109). Plaintiff's memorandum of law cites no non-hearsay evidence for this assertion.

The Court also notes that Perez provided a neutral, non-discriminatory reason for refusing to accede to Plaintiff's request for a schedule change:  that "there was no room for schedule flexibility" on the day that Plaintiff asked for it. Pl.'s Mem. of Law in Resp. to TWU at 11. Additionally, the record reflects non-gender-based reasons for Perez's verbal abuse of Plaintiff, such as that Plaintiff had stopped paying "50/50" dues to the Union, which are used to pay Perez's annual bonus, *see* Grandy Decl. ¶¶ 114–115, and that Plaintiff had repeatedly refused to accept overtime, *see id.* ¶ 119.

Additionally, the Court notes that TWU is likely not vicariously liable for Perez's conduct. While Perez acted as Plaintiff's union representative, Plaintiff has proffered little evidence that he exercised supervisory authority over her, meaning that TWU's liability is governed by a lower standard. In response to the incident between Plaintiff and Perez, a high-level TWU official, James Whalen, personally visited Plaintiff's worksite to speak with Plaintiff and Perez and to calm tensions. *See* Grandy Decl. ¶ 138; Whalen Dep. 231–32, 237–39. Because the incident had arisen out of a dispute over Plaintiff's requests for leaves of absence, Whalen implemented a new procedure for requesting leave. *See id.* at 231–32. Accordingly, the Union took appropriate remedial action in response to this incident. Thus, under either Title VII, the NYSHRL, or the NYCHRL, no reasonable juror could find that Perez's conduct, even if wrongful, can be imputed to the Union.

**D. Summary Judgment Is Granted in Part and Denied in Part as to Plaintiff's Retaliation Claims Against TWU**

Plaintiff brings retaliation claims against TWU, again scattering a kitchen sink of allegedly retaliatory actions throughout her response papers. The Court will address each theory of retaliation in turn.[44]

**1. The Applicable Law**

Title VII and NYSHRL retaliation claims brought against a union are governed by a burden-shifting framework similar to the framework used in employer retaliation cases. *See Bey v. I.B.E.W. Local Union No. 3*, No. 05-CV-7910, 2008 WL 821862, at *21 (S.D.N.Y. Mar. 26, 2008), *aff'd*, 374 F. App'x 187 (2d Cir. 2010). "To make out a prima facie case of retaliation by a union, a plaintiff must show that (1) she was engaged in an activity protected under Title VII and known to the union; (2) she suffered adverse union action; and (3) there was a causal connection between the protected activity and the union's actions." *Dillard*, 2015 WL 6913944, at *5 (quoting *Agosto*, 107 F. Supp. 2d at 309); *see also Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114, 123 (2d Cir. 2008). As the Court has discussed, temporal proximity may be sufficient to establish the third prong of a plaintiff's prima facie case. *See El Sayed*, 627 F.3d at 932. Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a "neutral, or non-discriminatory, reason for its action." *Bey*, 2008 WL 821862, at *19.

NYCHRL retaliation claims are "construed more broadly than Title VII and NYSHRL retaliation claims." *Goonewardena v. N.Y. State Workers' Comp. Bd.*, No. 09-CV-8244, 2016 WL 7439414, at *19 (S.D.N.Y. Feb. 9, 2016) (citing *Mihalik*, 715 F.3d at 112), *report and*

---

[44] Any theories of TWU's retaliation not discussed in this opinion were not addressed in Plaintiff's response papers and, thus, have been abandoned. *See Camarda*, 673 F. App'x at 30; *Jackson*, 766 F.3d at 195.

*recommendation adopted*, 2016 WL 7441695 (S.D.N.Y. Dec. 22, 2016). Specifically, under the

NYCHRL, "the plaintiff need not prove any 'adverse' [union] action; instead, he must prove that

something happened 'that would be reasonably likely to deter a person from engaging in

protected activity.'" *Jimenez v. City of New York,* 605 F. Supp. 2d 485, 528 (S.D.N.Y. 2009)

(quoting N.Y.C. Admin. Code § 8-107(7)); *see also Ya-Chen Chen v. City Univ. of N.Y.*, 805

F.3d 59, 76–77 (2d Cir. 2015).

### 2. TWU's Motion Is Granted in Part and Denied in Part as to Its Denial of Overtime

Plaintiff argues that TWU denied her opportunities for overtime between January and

July 2014, when she worked at the Quill Bus Depot, in retaliation for discrimination complaints

that she submitted to Taramchand Kateran in December 2013. *See* Pl.'s Mem. of Law in Resp.

to TWU at 6 (citing Grandy Decl. ¶ 40). This argument fails. As the Court has discussed,

Plaintiff has adduced no evidence that she asked for overtime during this period and, once

Plaintiff did ask for overtime, TWU assigned it to her almost immediately. *See supra* Part

IV.B.4. Accordingly, Plaintiff's argument fails as to her Title VII and NYSHRL claims because

she cannot show that she was subjected to adverse union action, the second prong of her prima

facie case. Plaintiff's argument also fails as to her NYCHRL claims because she cannot show

that TWU took any action against her at all, let alone action reasonably likely to deter a person

from complaining about discrimination. *Ya-Chen Chen*, 805 F.3d at 77.

Plaintiff also argues that TWU denied her overtime in August and September 2014, when

she worked at the Manhattanville Bus Depot, in retaliation for the discrimination complaints and

EEOC charge that she submitted in June and July 2014. *See* Pl.'s Mem. of Law in Resp. to

TWU at 7–10, 25. Plaintiff provides sufficient evidence to prove a prima facie case as to this

claim. Beginning with the first prong, Plaintiff's discrimination complaints and EEOC charge

undoubtedly constitute protected activity. As for the second prong, as the Court has discussed, Plaintiff repeatedly requested overtime, but TWU did not give it to her. *See supra* Part IV.B.4.b. "A deprivation of the opportunity to earn overtime can be considered a materially adverse employment action." *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 217–18 (E.D.N.Y. 2014) (collecting cases). And as for the third prong, TWU denied Plaintiff overtime only one to two months after she complained of discrimination, thus establishing temporal proximity. As discussed in the context of Plaintiff's gender discrimination claims, TWU offers no non-conclusory argument in response to this evidence. *See supra* Part IV.B.4; TWU Mem. of Law at 14; TWU Reply Mem. of Law at 6–7. Accordingly, TWU's motion for summary judgment must be denied on this claim.

For all these reasons, TWU's motion for summary judgment on Plaintiff's retaliation claims is granted as to its denial of overtime at the Quill Bus Depot but denied as to its denial of overtime at the Manhattanville Bus Depot.

### 3.      Other Allegations of Retaliation

Turning to Plaintiff's next theory of retaliation, Plaintiff argues that TWU retaliated against her when it prevented her from driving a MaBSTOA truck as part of her duties. *See* Pl.'s Mem. of Law in Resp. to TWU at 10. Beginning with the third prong of Plaintiff's prima facie case, TWU's action took place in October 2014, a few months after Plaintiff filed discrimination charges against the Union; as the Court has discussed, this timeframe is at the very outer bounds of temporal proximity sufficient to give rise to an inference of retaliation, but, in light of TWU's total failure to respond to this claim, the Court finds it sufficient to establish the first and third prongs of Plaintiff's prima facie case. Turning to the second prong, Plaintiff received a higher rate of pay when performing this task than when performing her other Cleaner duties, *see* Grandy Decl. ¶¶ 95–96; thus, TWU's act of preventing her from performing this task constituted an

adverse union action. For all these reasons, Plaintiff has established a prima facie case as to this action. TWU has entirely failed to respond to this allegation, and, thus, is not entitled to summary judgment on this claim.[45]

Next, Plaintiff argues that a TWU official "questioned" her use of sick days after she filed a charge of discrimination against the Union. Pl.'s Mem. of Law in Resp. to TWU at 8; *see also* Grandy Decl. ¶¶ 78–82. This argument fails, as Plaintiff offers no evidence or argument that questioning her sick days was an adverse union action (under Title VII and the NYSHRL) or that it would be reasonably likely to deter a person from making a discrimination claim (under the NYCHRL). Plaintiff does not allege that she was disciplined or that she faced any repercussions from TWU for her sick-leave record.[46] Indeed, it was reasonable for TWU to raise questions about Plaintiff's sick-leave record, given the number of absences that she had. *See* Pl.'s Mem. of Law in Resp. to TWU at 8. Standing alone, the mere act of questioning an attendance record would not dissuade a reasonable person from making a charge of discrimination under any of the anti-discrimination statutes. Thus, Plaintiff has failed to establish a prima facie case, and TWU's motion for summary judgment is granted as to this claim.

Additionally, Plaintiff argues that TWU failed to tell her that she was "#1 on the list" of eligible candidates for promotion or that she had been considered for promotion several times, all allegedly in retaliation for her June and July 2014 discrimination complaints and EEOC charge. *See* Pl.'s Mem. of Law in Resp. to TWU at 8, 12, 25. This argument fails, as Plaintiff fails to

---

[45] The Court notes that Plaintiff's memorandum of law asserts that TWU stopped her from driving a truck on only one occasion (October 27, 2014). *See* Pl.'s Mem. of Law in Resp. to TWU at 10 (citing Grandy Decl. ¶¶ 95–96).

[46] Plaintiff argues that she faced repercussions from MaBSTOA for her sick-leave record, in that MaBSTOA did not promote her based in part on allegedly pretextual "attendance" issues. But Plaintiff offers no evidence that TWU took action against her for her sick-leave record other than merely "questioning" that record.

explain how these actions were materially adverse (under Title VII and the NYSHRL) or reasonably likely to deter a person from making a discrimination claim (under the NYCHRL). Even though Plaintiff did not know that she was "#1 on the list" of eligible Helper candidates, Plaintiff was considered several times for the promotion between 2014 and 2017. It is not clear how knowledge of her alleged position on the list or knowledge that she had been considered several times, would have caused her (or any reasonable person) to act any differently. Accordingly, TWU's motion for summary judgment is granted as to this claim.

Finally, Plaintiff argues that TWU "failed to grieve her promotion denial" less than two months after she filed a discrimination charge against TWU. Pl.'s Mem. of Law in Resp. to TWU at 25. It is not clear what action this refers to, as Plaintiff alleges that TWU's failure to grieve Plaintiff's promotion denial took place in June 2016, approximately two years—not two months—after Plaintiff filed her EEOC charge against TWU. *See id.* at 12 (citing Barbieri Decl. Ex. C). Two years is far too long to establish a causal connection based on temporal proximity, and Plaintiff has advanced no other evidence that tends to show a causal connection. Accordingly, to the extent Plaintiff intends to pursue a retaliation claim against TWU based on its failure to grieve her promotion denial, TWU's motion for summary judgment is granted as to that claim.

For all these reasons, TWU's motion for summary judgment on Plaintiff's retaliation claims is granted on all theories of retaliation argued in Plaintiff's memorandum of law except for TWU's denial of overtime at the Manhattanville Bus Depot and TWU's act of preventing Plaintiff from driving a MaBSTOA bus in October 2014, for which the motion is denied.

### E. Summary Judgment on Plaintiff's Claim for Interference with Protected Rights is Granted as to TWU but Denied as to MaBSTOA

Plaintiff's Amended Complaint brings a claim against MaBSTOA and TWU for interference with protected rights, pursuant to the NYCHRL. *See* Am. Compl. ¶¶ 206–207. TWU moved for summary judgment on this claim and addressed it in its motion papers. *See* TWU Mem. of Law at 22–23. Plaintiff failed to address this claim in her memorandum of law submitted in response to TWU's motion. *See* Pl.'s Mem. of Law in Resp. to TWU. Accordingly, Plaintiff has abandoned this claim as to TWU. See *Camarda v. Selover*, 673 F. App'x at 30; *Jackson*, 766 F.3d at 195. Plaintiff has not, however, abandoned this claim as to MaBSTOA, because MaBSTOA failed to address this claim in its motion for summary judgment. *See* MaBSTOA Mem. of Law.

Accordingly, TWU's motion for summary judgment on this claim is granted, but MaBSTOA's motion for summary judgment on this claim is denied.

## CONCLUSION

For all the foregoing reasons, Defendants' motions for summary judgment are GRANTED IN PART AND DENIED IN PART. To summarize the Court's rulings:

1. TWU's and MaBSTOA's motions for summary judgment on Plaintiff's claim for aiding and abetting under the NYCHRL are GRANTED.

2. MaBSTOA's motion for summary judgment as to Plaintiff's claims for gender discrimination based on its failure to promote Plaintiff to Helper pursuant to Title VII, the NYSHRL, and the NYCHRL is DENIED. All of Plaintiff's other theories of gender discrimination on the part of MaBSTOA are abandoned.

3. MaBSTOA's motion for summary judgment as to Plaintiff's claims for hostile work environment pursuant to Title VII, the NYSHRL, and the NYCHRL is DENIED.

4.      MaBSTOA's motion for summary judgment as to Plaintiff's claims for retaliation pursuant to Title VII, the NYSHRL, and the NYCHRL is GRANTED as to the failure to promote Plaintiff to Helper in late 2014 and DENIED as to the assignment to exterminate bugs in a bus in September 2014. All of Plaintiff's other theories of retaliation on the part of MaBSTOA are abandoned.

5.      TWU's motion for summary judgment as to Plaintiff's claims for gender discrimination pursuant to Title VII, the NYSHRL, and the NYCHRL is GRANTED as to the Union's failure to submit Plaintiff's complaints to formal grievance procedures; DENIED as to the Union's failure to provide Plaintiff information about Helper vacancies in 2013; GRANTED as to as to the Union's failure to provide Plaintiff information about Helper vacancies between 2014 and 2017; GRANTED as to the Union's failure to provide any other type of promotion-related information; DENIED as to the Union's denial of overtime at the Manhattanville Bus Depot; and GRANTED as to the Union's alleged denial of overtime at the Quill Bus Depot. All of Plaintiff's other theories of gender discrimination on the part of TWU are abandoned.

6.      TWU's motion for summary judgment as to Plaintiff's claims for hostile work environment pursuant to Title VII, the NYSHRL, and the NYCHRL is GRANTED.

7.      TWU's motion for summary judgment as to Plaintiff's claims for retaliation pursuant to Title VII, the NYSHRL, and the NYCHRL is GRANTED as to the Union's alleged denial of overtime at the Quill Bus Depot; DENIED as to the Union's denial of overtime at the Manhattanville Bus Depot; DENIED as to the Union's act of preventing Plaintiff from driving a MaBSTOA truck in October 2014; GRANTED as to TWU's act of questioning Plaintiff's use of sick days; GRANTED as to TWU's failure to provide Plaintiff promotion-related information;

and GRANTED as to TWU's failure to grieve Plaintiff's promotion denial.   All of Plaintiff's other theories of retaliation on the part of TWU are abandoned.

8.      TWU's motion for summary judgment on Plaintiff's claim for interference with protected rights under the NYCHRL is GRANTED.  To the extent MaBSTOA intended to move for summary judgment on Plaintiff's claim for interference with protected rights, the motion is DENIED.

9.      The parties are ORDERED to appear for a conference on **October 12, 2018 at 10:00 a.m.**, Courtroom 443, Thurgood Marshall U.S. Courthouse, to set a trial schedule.  No later than **October 4, 2018**, the parties must submit a joint letter with three mutually convenient trial dates between January 2, 2019, and May 1, 2019.

The Clerk of Court is respectfully directed to close the open motions at Dkts. 78 and 82.

**SO ORDERED.**

**Date:   September 26, 2018**
**       New York, New York**

**VALERIE CAPRONI**
**United States District Judge**